**David FUMO, M.D., Appellant–Defendant Below,**

v.

**MEDICAL GROUP OF MICHIGAN CITY, INC., Appellee–Plaintiff Below.**

No. 46A04–9104–CV–124.[1]

Court of Appeals of Indiana, Third District.

April 27, 1992.

Rehearing Denied June 23, 1992.

---

**1.** This case was diverted to this office by order of the Chief Judge.

Frederick Wm. LaCava and Robert G. Zeigler, LaCava, Zeigler & Carter, Indianapolis, for appellant-defendant.

Kathryn D. Schmidt and George W. Carberry, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellee-plaintiff.

STATON, Judge.

David Fumo, M.D. appeals the grant of a preliminary injunction enforcing the anti-competition provisions of a contract between Fumo and the Medical Group of Michigan City, Inc. ("Medical Group"). Fumo presents for our review the sole (restated) issue of whether the trial court erroneously issued and modified the preliminary injunction.[2]

---

**2.** Fumo framed the issue for review as: "whether the covenant not to compete contained in the employment agreement between Dr. Fumo and the Medical Group of Michigan City, P.C. is void as a matter of law." Brief of Appellant, p. 1.

Fumo's action seeking a declaratory judgment that the covenant is void has not progressed to judgment. Rather, Fumo brings an interlocutory appeal pursuant to Ind.Appellate Rule

We order the preliminary injunction dissolved.

On January 2, 1987, Fumo and Medical Group executed a Physician's Contract which included an anti-competition covenant. Fumo was prohibited from the practice of medicine within a 25 mile radius of Michigan City, Indiana for a period of two years following termination of his association with Medical Group. Fumo resigned his employment with Medical Group effective January 31, 1991 and sought a declaratory judgment regarding the enforceability of the covenant.

On March 19, 1991, Medical Group filed a complaint for preliminary and permanent injunctions restraining Fumo from the practice of medicine within the protected area. On March 26, 1991, hearing was held concerning the request for preliminary injunctive relief.[3] On April 2, 1991, the trial court granted Medical Group's request for a preliminary injunction, issuing findings of fact and conclusions of law in support thereof:

## FINDINGS OF FACT

Based upon the foregoing testimony and document, the Court finds:

1. The Medical Group of Michigan City, P.C. is a professional corporation incorporated under the laws of the State of Indiana engaged in the business of providing medical services and has its principal office at 1225 E. Coolspring Avenue, Michigan City, Indiana.

2. That Dr. David Fumo is a Gastroenterologist who has lived and practiced medicine in Michigan City since 1987.

3. On March 17, 1986, Dr. David Fumo submitted to the Medical Group of Michigan City, P.C. a letter of intent expressing interest in his employment at the Medical Group of Michigan City on or about July 1, 1987.

4. That following Dr. Fumo's letter of intent discussions and negotiations were had between Dr. Fumo and members of the Medical Group of Michigan City concerning the terms and conditions upon which Dr. Fumo might become associated with or join the Group.

5. That on the 2nd day of January, 1987, Dr. Fumo executed a Physician's Contract which is Plaintiff's Exhibit A. That Dr. Fumo was to become affiliated with the Medical Group Corporation beginning on the 1st day of August, 1987 and continuing to and including the first day of July, 1989 and thereafter until either party terminated the agreement by 180 days written notice. That before execution of the Physician's Contract, Dr. Fumo had the contract reviewed by an attorney.

6. That for the year, August 1, 1987 to January 31, 1991 the Medical Group of Michigan City, P.C. provided substantial medical services to patients throughout a geographic area of a 25 mile radius of the location of the Medical Group in the city of Michigan City, Indiana which is situated on East Coolspring Avenue. That the Group had patients from southwestern Michigan and Indiana.

7. That from August 1, 1987 when Dr. Fumo joined the Medical Group to July 31, 1988, Dr. Fumo's gross production or billings at the Medical Group was $522,-603. That from September 1, 1988 to July 31, 1989, Dr. Fumo's gross production or billings at the Group was $553,-385. That from August 1, 1989 to July 31, 1990 Dr. Fumo's gross production or billings at the Group was $764,580, and from August 1, 1990 to January 31, 1991, when Dr. Fumo withdrew from the Group his gross production or billings for the Medical Group was $315,831.

8. That from August 1, 1987 to July 31, 1988, Dr. Fumo received a distribution and allocation of the net income from the

---

4(B)(3) challenging the grant of a preliminary injunction.

**3.** Fumo's declaratory judgment action was filed in LaPorte Superior Court. The Group's complaint for preliminary and permanent injunctions was filed in LaPorte Circuit Court. On March 26, 1991, Judge Gettinger of the LaPorte Circuit Court accepted the transfer of the declaratory judgment action from LaPorte Superior Court, pursuant to the parties' stipulation of jurisdiction and the Superior Court's order of transfer. Record, p. 364.

Medical Group in the amount of $175,360. From September 1, 1988 to July 31, 1989 Dr. Fumo received a distribution and allocation of net income from the Medical Group in the sum of $209,456. That from August 1, 1989 to July 31, 1990, Dr. Fumo received a distribution and allocation of net income from the Medical Group in the sum of $261,369. From August 1, 1990 to January 31, 1991, Dr. Fumo received a distribution and allocation of net income from the Medical Group of $171,464.

9. That from August 1, 1987 to January 31, 1991, while an employee of the Medical Group, Dr. Fumo engaged in the practice of medicine specializing in gastroenterology.

10. That from August 1, 1987 to January 31, 1991, members of the Medical Group of Michigan City, Inc. were likewise engaged in the practice of medicine. In addition, there are other gastroenterologists within the 25 mile radius including Dr. Serritella, Dr. Agrawal, Dr. Gupta, Dr. Hall, Dr. Paul, and Dr. Dalal.

11. That on July 31, 1990, Dr. Fumo tendered his resignation to the Medical Group and in accordance with his agreement, his resignation would be effective 180 days from the date of July 31, 1990, to-wit: January 31, 1991.

12. That following Dr. Fumo's withdrawal from the Medical Group of Michigan City, P.C. he has engaged in the practice of medicine within a radius of 25 miles of the corporate limits of Michigan City, Indiana and continues to practice medicine within such a radius at the present time.

13. That it was the custom and practice of the doctors of the Medical Group of Michigan City during the years 1987, 1988, 1989 and 1990 to refer patients to other doctors in the Medical Group of Michigan City practicing the various medical specialties practiced in the Group as the patient's medical needs required.

14. That upon the execution of the employment agreement entered into by the Medical Group of Michigan City, in regards to the services to be rendered by Dr. Fumo, the Medical Group of Michigan City promised to furnish Dr. Fumo with all necessary and reasonable medical supplies in order to enable Dr. Fumo to adequately carry on the practice of his profession. The Medical Group purchased the equipment for the Gastroenterology Department prior to Dr. Fumo arriving. The equipment included items for his consultation room and office, regular examining rooms and equipment for G–I testing lab. The total costs to the Medical Group creating the G–I testing lab and Dr. Fumo's facilities was $52,948.00.

15. That under the terms of the Physician's Contract executed by Dr. Fumo, he agreed to be bound by all of the terms of the contract (Plaintiff's Exhibit 2). Under the terms of the contract, it is provided that in the event the agreement is terminated for any reason by either the Medical Group of Michigan City or Dr. Fumo prior to its expiration or expires by its terms then and in either event Dr. Fumo shall not engage in the practice of medicine within a radius of 25 miles of the corporate limits of Michigan City, Indiana, for a period of two years after such termination or expiration. Dr. Fumo acknowledges that the Medical Group of Michigan City may not have an adequate remedy at law for the violation of this paragraph and in the event of this paragraph being violated by Dr. Fumo, the Medical Group may obtain injunctive relief in a court of competent jurisdiction so as to enjoin such violation together with attorney's fees and costs.

16. That for the years 1987, 1988, 1989 and 1991 [sic] the Medical Group, of which Dr. Fumo was an employee rendered substantial medical service to patients throughout an area contained within a 25 mile radius and more from the building occupied by the Medical Group of Michigan City. That said contract contained in the Physician's Contract provided that any physician of the Medical Group who shall withdraw from the Group shall not practice medicine for a period of two years within a radius of 25 miles of the corporate limits of Michigan

City, Indiana and it is reasonably necessary to protect the interest of the Medical Group of Michigan City, Inc. and not unreasonably restrictive as to Dr. Fumo.

17. That during the year 1987 from August 1 until the effective date of his withdrawal from the Medical Group, Dr. Fumo produced at the Medical Group gross production and billings in the amount of $2,156,399.

18. That the restrictive covenant contained in the physician's contract is valid and enforceable as to Dr. Fumo and that the Medical Group of Michigan City, P.C. is entitled to a preliminary injunction in its favor on the validity and enforceability of said restrictive covenant provision of the Physician's Contract.

## CONCLUSIONS OF LAW

From the foregoing findings of fact, the Court makes the following conclusions of law:

1. That the defendant, David Fumo, M.D. entered into an agreement with the plaintiff under which he agreed not to engage in the practice of medicine within a radius of 25 miles of the corporate limits of Michigan City, Indiana for a period of two years after the agreement is terminated for any reason;

2. That on January 31, 1991 the defendant, David Fumo, M.D. did terminate his physician's contract with the Medical Group of Michigan City, P.C.

3. A preliminary injunction should issue to prevent irreparable injury loss or damage to the Medical Group of Michigan City, P.C. and to preserve the status quo during the pendency of this cause of action until it is finally determined on the merits.

## PRELIMINARY INJUNCTION

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THE COURT as follows:

1. The defendant, David Fumo, M.D., be and he is hereby restrained and enjoined, pending the determination of this action on its merits from practicing medicine within a 25 mile radius of the corporate limits of Michigan City, Indiana from the date the defendant, David Fumo, M.D. was served with a copy of this preliminary injunction[.]

Record, p. 332–6.

On April 8, 1991, Fumo petitioned the trial court for an order staying the preliminary injunction pending appeal. On April 22, 1991, the trial court issued an order modifying the preliminary injunction granted April 2, 1991:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff, Medical Group of Michigan City, P.C. be and is hereby denied the enforcement of the covenant not to compete to the extent that it purports to prohibit the defendant, David Fumo, M.D. from taking care of any emergency patients who present themselves to LaPorte Hospital during the time that the defendant, David Fumo, M.D. is the only gastroenterologist available to take care of them. In all other respects, the Court will enforce the covenant by prohibiting David Fumo, M.D. from practicing medicine within the time and space limitations set out in the Employment Agreement."

Record, p. 357.

On June 4, 1991, this court granted Fumo's motion to stay the injunction in its entirety pending appeal.

■■■ The granting or denial of a preliminary injunction is within the sound discretion of the trial court. Our review is limited to a determination of whether the trial court clearly abused that discretion. *Harvest Ins. Agency v. Inter–Ocean Ins. Co.* (1986), Ind., 492 N.E.2d 686, 688. This court has no authority to weigh the evidence and resolve factual controversy to determine the appropriateness of injunctive relief. Rather, we look to the trial court's findings of fact required by Ind. Trial Rules 65 and 52. We will review questions of law and the overall sufficiency of the evidence as a matter of law. *Whiteco Industries, Inc. v. Nickolick* (1990), Ind.App., 549 N.E.2d 396, 398. In determining whether an abuse of discretion exists, we determine whether the findings validly sup-

port the court's decision. The findings will not be set aside unless clearly erroneous. T.R. 52(A); *Kozuch v. Cra–Mar Video Center, Inc.* (1985), Ind.App., 478 N.E.2d 110, 114, *trans. denied.* Findings are clearly erroneous if they are insufficient to disclose a valid basis for the legal result reached in judgment or are unsupported by evidence of probative value. *Hacienda Mexican Restaurant of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.* (1991), Ind.App., 569 N.E.2d 661, 666, *trans. denied.*

■ Discretion to grant or deny an injunction is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; (2) whether the plaintiff has at least a reasonable likelihood of success at trial; (3) whether the plaintiff's threatened injury outweighs the potential harm to the defendant resulting from the granting of the injunction; and (4) whether the public interest will be disserved. *Whiteco, supra,* at 397.

■ The instant findings recite the terms of the agreement between Fumo and the Group and review the history of the parties' conduct under the agreement. However, the findings do not address the effects of injunctive enforcement of the agreement upon the covenantee, the covenantor, or the public.[4] Essentially, the trial court found that Fumo entered into a valid agreement, accepted benefits thereun-

der and should be bound by the agreement terms, i.e., Medical Group showed a reasonable likelihood of success on the merits at trial. However, a plaintiff who seeks an interlocutory injunction enforcing a contract must, in addition to making a *prima facie* showing that the underlying contract is valid, show that irreparable harm will ensue if the injunction is not granted.

■ A preliminary injunction is an extraordinary remedy to be granted in rare instances. An injunction may be issued, upon balancing the consequent hardships, only where an irreparable injury cannot be redressed by a final judgment on the merits. *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 682–3, *reh. denied.* The effect of the injunction upon the public interest must be weighed with the relative potential harms to the parties. *Hacienda, supra,* at 666. Where an injunction is sought which would adversely affect a public interest, the court may in the public interest withhold relief until a final determination of the rights of the parties, although postponement may be burdensome to the plaintiff. *Wells, supra,* at 683, quoting *Yakus v. United States* (1944) 321 U.S. 414, 440–41, 64 S.Ct. 660, 675, 88 L.Ed. 834. Here, no finding is made that the public within the proscribed area is or is not at risk without the availability of Fumo's services.

■ The findings herein do not reflect consideration of all competing interests or disclose the reasons for the result reached.

---

**4.** The findings include no finding that threatened harm to the Group outweighs the harm inflicted by the grant of the injunction. Nor is there a finding that the Group would suffer irreparable harm during the pendency of the substantive claim, i.e., that monetary damages would inadequately compensate the Group. The primary factual dispute before the trial court concerned the adequacy of available gastroenterology procedures in the protected area absent Fumo's practice. Fumo presented uncontroverted evidence that he performed certain therapeutic procedures (as an alternative to surgery under general anesthetic) which were not performed by any Group member. The expert testimony concerning the anticipated effects of an injunction prohibiting Fumo's practice within the protected area was sharply conflicting. Drs. Gupta, Fumo and Hay opined that a nonemergency patient could travel outside the 25

mile protected area to undergo certain gastroenterology procedures. Other physicians (and patients) related their experiences during Fumo's temporary observance of the noncompetition covenant, detailing specific difficulties encountered. Drs. Back, Serritella and Klein opined that the public (within the protected area) would be underserved and exposed to greater risks without Fumo's services. Dr. Gupta indicated that he performed gastroenterology procedures at a hospital within the protected area and could accommodate more patients. He opined that the community would be adequately served without Fumo's practice in the protected area. However, Dr. Back and Dr. Klein each testified that he or she would not refer patients to Dr. Gupta. We may not resolve contested facts to determine whether the grant of the injunction would inflict greater harm than a denial.

Nor does the record disclose evidence that Medical Group would suffer irreparable harm not compensable by monetary damages.[5] Therefore, we order the instant preliminary injunction dissolved.

The Group's petition for a permanent injunction and Fumo's petition for a declaratory judgment are pending before the trial court.[6] Therefore, we briefly address Fumo's argument that trial on the merits is unnecessary because the covenant is contrary to public policy and void.

 A covenant in general restraint of trade is void as against public policy. However, a clear and specific restraint is enforceable if reasonable with respect to the covenantee, the covenantor and the public interest. *McCart v. H & R Block, Inc.* (1984), Ind.App., 470 N.E.2d 756, 763, *trans. denied.* Reasonableness is to be determined from the totality of the circumstances, i.e., the interrelationship of protectible interest, time, space, and proscribed activity. *Id.* at 764 (quoting *Frederick v. Professional Building Maintenance Industries, Inc.* (1976), 168 Ind.App. 647, 344 N.E.2d 299, 302).

 A covenant which restricts the provision of medical services in a proscribed area is not *per se* against public policy and void. *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276. Whether a particular covenant is against public policy is a question of law for the court to determine from all the circumstances, keeping in mind that persons should not be unnecessarily restricted in their freedom to contract. *Id.* at 279 (quoting *Hodnick v. Fidelity Trust Co.,* (1932) 96 Ind.App. 342, 350, 183 N.E. 488, 491).

 Fumo contends that his particular covenant is against public policy because the prohibition extends to hospitals within geographical areas not previously served by the Medical Group and to a medical specialty not practiced by any Medical Group member.[7] The covenant is not overbroad as a matter of law because the 25 mile radius encompasses hospitals other than those at which Medical Group members practice. Where individuals travel to obtain offered services, an employer may have a protectible interest extending over a geographical area greater than that previously serviced by the employee. *McCart, supra,* at 765. *See also Gomez v. Chua Medical Corp.* (1987), Ind.App., 510 N.E.2d 191, 193, *reh. denied* (geographical area of covenant was reasonable where the medical corporation had "a substantial patient base within the proscribed area").

Furthermore, the availability of the particular specialty practiced by the physician is a matter to be considered by the trial court in looking at the totality of the circumstances. Where a specialist offers services uniquely or sparsely available in a specified geographical area, an injunction may be unwarranted because the movant is unable to meet the burden of showing that the public would not be disserved. Here, facts material to the reasonableness determination are disputed. We may not resolve the intensely contested factual issue of whether the gastroenterology services (absent Fumo's services) offered in the proscribed area are so deficient as to expose the public to unnecessary risks. We decline to hold, as a matter of law, that a restriction upon the gastroenterology services offered by Fumo is void as against public policy.

5. Uncontroverted evidence established that Medical Group suffered a loss of income due to the termination of Fumo's employment with the group. Uncontroverted evidence also established that no Medical Group member practiced gastroenterology in direct competition with Fumo. Recruitment efforts had been unsuccessful as of the hearing date. Medical Group Administrator Deardoff opined that the proportional allocation of gross income to overhead and salary rendered recruitment difficult.

6. T.R. 65(A)(2) provides in pertinent part: "[A]ny evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial."

7. Fumo has not challenged the two-year time limitation of the instant anti-competition covenant and has specifically recognized that the Group has a protectible interest. Record, p. 820. His challenges concern the proscribed activity and geographic area.

The interlocutory order for injunctive relief is dissolved. We remand for trial on the merits of the pending substantive claims.

CONOVER and RUCKER, JJ., concur.