**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., and Bob Gardner, in his Capacity as Commissioner of the Indiana High School Athletic Association, Inc., Appellants–Defendants,**

**Paul Crousore, in his Capacity as Principal of Warsaw Community High School, Defendant,**

**v.**

**Samantha WIDEMAN, By and Through her next friend and parents, James WIDEMAN and Penny Wideman, Appellee–Plaintiff.**

No. 43A03–9701–CV–8.

Court of Appeals of Indiana.

Dec. 15, 1997.

---

Robert M. Baker, III, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, for Appellants-Defendants.

Steven R. Hearn, Millard P. Plumlee, Lemon, Armey, Hearn & Leininger, Warsaw, for Appellee-Plaintiff Samantha Wideman, by and through her next friend and parents, James Wideman And Penny Wideman.

## OPINION

HOFFMAN, Judge.

Appellants-defendants Indiana High School Athletic Association, Inc., and Bob Gardner, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc. (collectively referred to as IHSAA) bring this interlocutory appeal from the trial court's grant of appellee-defendant Samantha Wideman's (Samantha) preliminary injunction enjoining the IHSAA from rendering Samantha ineligible to compete in high school athletics for a period of 365 days.

Until August 9, 1996, Samantha and her parents, James and Penny Wideman, lived in Mentone, Indiana, which is approximately 17 miles southwest of Warsaw, Indiana. Samantha was enrolled at Tippecanoe Valley High School (Tippy Valley) where she competed on the girl's varsity volleyball and basketball teams during the 9th and 10th grades. According to newspapers, Samantha was expected to be "the cornerstone" of Tippy Valley's basketball program during her junior and senior years.

James and Penny work in Warsaw and commuted back and forth to work. Penny's father, a stroke victim who suffers from blindness, hearing loss and heart disease, lives in Warsaw. In the fall of 1995, it was discovered that Penny's mother had developed a brain tumor. During her mother's illness, Penny was the primary care giver for both her parents. After Penny's mother passed away in May of 1996, Penny became solely responsible for the care of her father. James also has a widowed father who lives in Warsaw. Further, James himself has multiple sclerosis, and in February of 1996, his condition worsened due in part to his workload and a loss of sleep.

In June of 1996, the Widemans listed their home in Mentone for sale and in August of 1996 they sold it at full list price and moved to Warsaw. The Widemans purchased land in Warsaw and began constructing a new home in the fall of 1996. On August 9, 1996, Samantha enrolled at Warsaw Community High School (WCHS).

At WCHS Samantha sought to play varsity sports. Based upon an investigation by the IHSAA Assistant Commissioner, it was determined that Samantha's transfer from Tippy Valley to WCHS was "primarily for athletic reasons" and she was declared ineligible for a period of 365 days based on IHSAA Rule 19-4. Rule 19-4 provides that a student athlete who transfers schools for "primarily athletic reasons" may be ineligible to participate in interschool athletics. Samantha appealed the Assistant Commissioner's decision, and on October 16, 1996, a hearing was held before the IHSAA Executive Committee. On October 28, 1995, the Executive Committee issued its ruling upholding the decision of the Assistant Commissioner. On November 12, 1996, Samantha filed the present case with the Kosciusko Superior Court seeking to enjoin the IHSAA from enforcing its decision. The trial court granted Samantha's injunction, and the IHSAA now appeals.

On appeal the IHSAA raises two issues, which this Court consolidates on review: whether the trial court erred in granting Samantha's preliminary injunction enjoining the IHSAA from rendering Samantha ineligible to compete in high school athletics for a period of 365 days following her transfer from Tippy Valley to WCHS.

The grant or denial of a preliminary injunction rests within the trial court's equitable discretion, and this Court will reverse only if the trial court's action constitutes a clear abuse of discretion. *L.E. Services v. State Lottery Com'n*, 646 N.E.2d 334, 349 (Ind.Ct.App.1995), *trans. denied.* Generally, the trial court considers four factors in determining the propriety of injunctive relief:

(1) whether plaintiff's remedies at law are inadequate, thus, causing irreparable harm pending resolution of the action;

(2) whether the plaintiff can demonstrate a reasonable likelihood of success on the merits;

(3) whether threatened injury to the plaintiff outweighs the threatened harm the grant of relief would occasion upon the defendant; and

(4) whether the public interest would be disserved by granting relief.

*Id.; Kennedy v. Kennedy*, 616 N.E.2d 39, 41 (Ind.Ct.App.1993), *trans. denied.* Ind.Trial Rule 52(A)(1) further requires a trial court to enter special findings of fact when it grants or denies a preliminary injunction.

Review of the grant or denial of a preliminary injunction is limited to whether the trial court abused its discretion. *Kennedy*, 616 N.E.2d at 41. This Court will neither reweigh the evidence nor resolve factual controversies. *Id.* Instead, this Court looks to the special findings of fact to see whether they "validly support the [trial] court's decision." *Id.* (quoting *Fumo v. Medical Group of Michigan City*, 590 N.E.2d 1103, 1107–1108 (Ind.Ct.App.1992), *trans. denied*). Findings will not be set aside unless they are "clearly erroneous," meaning both "insufficient to disclose a valid basis for the legal result reached in judgment" and "unsupported by evidence of probative value." *Fumo*, 590 N.E.2d at 1108. This Court reviews the overall sufficiency of the evidence as a matter of law. *Id.* at 1107.

Specifically, the IHSAA contends that Samantha failed to demonstrate a probability of success on the merits. When reviewing IHSAA eligibility decisions, a trial court is limited to reviewing the record of the proceedings conducted before the IHSAA with respect to the factual determinations made by the IHSAA. The court may not reweigh the evidence or judge witness' credibility but simply analyzes the record as a whole, including both the record of proceedings before the IHSAA together with any properly admitted, relevant new evidence presented to the trial court, to determine whether the IHSAA's findings were supported by substantial evidence. *Ind. High School Athletic Ass'n v. Avant*, 650 N.E.2d 1164, 1168 (Ind.Ct.App.1995), *trans. denied; Kriss v. Brown*, 180 Ind.App. 594, 599–600, 390 N.E.2d 193, 197 (1979); *see also Terrell v. Palomino Horse Breeders of America*, 414 N.E.2d 332, 335 n. 23 (Ind.Ct.App.1980). However, the IHSAA's decision must be overturned when it is determined that the association acted arbitrarily and capriciously in making the decision. *See IHSAA v. Schafer*, 598 N.E.2d 540, 558 (Ind.Ct.App. 1992), *trans. denied.*

The IHSAA's determination that Samantha was athletically ineligible was based on IHSAA Transfer Rule 19–4 governing transfer eligibility which states:

To preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons, regardless of the circumstances, student athletes who transfer from one school to a new school for *primarily athletic reasons* or as a result of undue influence will become ineligible to participate in interschool athletics in the new school for a period not to exceed 365 days from the date the student enrolls at the new school[.] . . .

(Emphasis added.) A "[t]ransfer for primarily athletic reasons" is defined, but is not limited to:

a. a transfer to obtain the athletic advantage of a superior, or inferior, athletic team, a superior athletic facility or a superior coach or coaching staff;

b. a transfer to obtain relief from a conflict with the philosophy or action of an administrator, teacher or coach relative to athletics;

c. a transfer seeking a team consistent with the student's athletic abilities;

d. a transfer to obtain a means to nullify punitive action taken by the previous school.

IHSAA Rule 19. Under Rule 19–5, a student who transfers with a corresponding change of residence to a new school district by the student's custodial parent(s) may be declared immediately eligible to participate provided the change of residence was bona fide. *Id.* As set forth in the rule:

Determination of what constitutes a 'bona fide' change of residence depends upon the facts in each case, however, to be considered, the following facts **must** exist:

a. the original residence must be abandoned as a residence; that is, sold, rented or disposed of, or in the process of being disposed of as a residence and must not be used as a residence by **any** member of the student's immediate family; and

b. the student's entire immediate family must make the change and take with them the household goods and furniture appropriate to the circumstances. Under no circumstances can a single family unit have two or more residences for eligibility purposes.

IHSAA Rule 19.

The motivation behind Samantha's transfer to WCHS was a factual issue before the IHSAA. The trial court held that the IHSAA's decision declaring Samantha ineligible was arbitrary and capricious based on its finding that there was insufficient evidence to support the IHSAA's determination that the move was made primarily for athletic reasons.

In the present case, the uncontroverted evidence is clear that the Widemans' change of residence was "bona fide" as defined by the IHSAA rules. In August of 1996, the Widemans sold their home at its full list price and moved to Warsaw where they lived with James' father while awaiting the construction of their new home. Although the Widemans looked at land south of Warsaw, which was still in the Tippecanoe Valley School District, they ultimately decided to build a house near James' father in the area where James grew up. In Samantha's IHSAA transfer report, Duane Burkhart, Tippy Valley's Athletic Di-

rector, further stated that when he signed the question regarding Samantha's athletic eligibility at WCHS "yes/no," what he meant was that he believed that Samantha would be eligible as long as her parents sold their home in the Tippecanoe Valley School District and moved the family to Warsaw. Thus, by Burkhart's own admission, Samantha was eligible to compete in WCHS's athletic program.

The IHSAA contends that the trial court ignored the IHSAA's Finding No. 7(a)-(f) which sets forth instances demonstrating the Widemans' dissatisfaction with the Tippy Valley girl's basketball program. The evidence supporting these allegations is based primarily on handwritten affidavits from purported witnesses which were submitted on the day of the hearing and after the IHSAA Assistant Commissioner had made his decision. A large portion of the evidence was conflicting, unsubstantiated, and hearsay.

First, as to the subsection 7(a) regarding Penny telling Mike Walters and Steven Tucker during the 1994–1995 basketball season that if Burkhart was back the following year as coach, they were considering moving to Plymouth, Indiana. These statements have little bearing on this case as the Widemans did not move to Plymouth but rather moved to Warsaw for legitimate family reasons. Subsection (b) cites an incident in early December 1995 when the Widemans telephoned Athletic Director Burkhart after Samantha was dismissed from basketball practice. Burkhart remembers that at the time Penny threatened to move. Penny, however, does not remember threatening to move. Subsection (c) is based on hearsay in which John Parker, the father of another Tippy Valley player, told Burkhart that the Parkers were possibly moving away and that he heard the Widemans and Glingles had also discussed moving. The IHSAA's Finding 7(d) cites Diane Yarkin, President of the Tippy Valley School Board, who stated that Penny had told her about the conversation with Burkhart. Yarkin, however, also testified that given the Widemans' family situations she believed that the Widemans had legitimate reasons for moving to Warsaw. Subsection (e) involves an incident in Febru-

ary of 1996, when Penny Wideman and Luanne Parker requested a meeting to discuss the basketball program. In attendance at the meeting was Dr. Karen Boling, Superintendent of Tippy Valley; Yarkin; and Burkhart. Burkhart stated that at the meeting he asked Penny and Luanne whether they were considering moving. Yarkin, however, does not remember the conversation about moving. Finally, in subsection (f), the IHSAA cites statements which Burkhart alleged that Rita Price, a local radio announcer, had made to him at the Kosciusko County 4–H Fair. Price denied making the statements, and Burkhart himself acknowledged that if anything Price was passing on a rumor. The evidence supporting IHSAA Finding No. 7(a)-(f) is inconclusive at best and does not support the IHSAA's conclusion that Samantha's transfer to WCHS was motivated "primarily by athletic reasons."

The IHSAA's decision further ignores its own Findings Nos. 1–5 which uphold the conclusion that the Widemans' move was not athletically motivated. There is substantial evidence that the Widemans moved from Mentone to Warsaw primarily for legitimate family, health and employment concerns rather than athletic reasons. James and Penny Wideman both have elderly parents living alone in Warsaw. Penny's mother recently passed away, and her father is unable to independently care for himself and requires close monitoring and observation. Penny's father is now dependent on her to prepare his meals, transport him to medical appointments, buy his groceries and do his housecleaning. James and Penny also work in Warsaw. They each commute 25 to 30 minutes one-way along a winding road from Mentone to Warsaw. The frequent commutes were burdensome to both James and Penny and created hardships on their marriage and home life. Additionally, James' multiple sclerosis has worsened recently, in part, due to his workload and a loss of sleep. The Widemans admittedly expressed concerns about the civility of Tippy Valley's coaching staff in a meeting with school administrators in February of 1996. However, this cannot be considered evidence that Samantha's transfer was "primarily for athletic reasons." Additionally, James Wideman's in-

quiry into the academic ratings of other schools cannot be considered evidence to support the IHSAA's decision. The Widemans had been considering moving nearer to Warsaw and cannot be criticized for checking other schools before finalizing their decision to move.

The IHSAA's suggestion that Samantha live with a relative or commute from Warsaw to Tippy Valley is in direct conflict with the philosophy underlying the IHSAA eligibility transfer rules. The stated philosophy of the IHSAA transfer rule provides in part:

c. Standards governing residence and transfer are a necessary prerequisite to participation in interschool athletics because:

\* \* \* \* \* \*

(6) they maintain the fundamental principle that a high school student should live at home with his/her parents or legally-appointed guardian (if the parents are deceased) and attend school in the school district in which the parents or guardians live;

(7) they reinforce the view that the family is a strong and viable unit in our society, and as such, is the best place for students to live while attending high school[.]

IHSAA Manual Rule 19. Clearly, Samantha's desire to live with her parents in Warsaw and to attend school in the district where they live is in keeping with the IHSAA's own philosophy. The trial court did not err in concluding the IHSAA's decision was arbitrary and capricious. Therefore, Samantha has a reasonable likelihood for success on the merits of the case.

IHSAA, relying on *Whiteco Industries, Inc. v. Nickolick,* 549 N.E.2d 396 (Ind.Ct. App.1990), also argues that the trial court failed to enter specific findings on each of the factors relative to granting a preliminary injunction. Initially, it is noted that the present case is substantially different from *Whiteco* where the trial court granted defendant's motion for a preliminary injunction without entering *any* findings of fact and conclusions of law as required by Ind.Trial Rules 52(A) and 65(D). Here, the trial court

entered numerous findings of fact and conclusions of law supporting its grant of Samantha's motion for preliminary injunction. The record discloses sufficient evidence to support these factors and the trial court's conclusion that the IHSAA acted arbitrarily and that Samantha would suffer irreparable injury unless the enforcement of the IHSAA's decision was enjoined.

 As previously discussed, there is substantial evidence in the record that Samantha did not transfer "primarily for athletic reasons" and that the IHSAA's ruling was arbitrary and capricious. The court also found that Samantha is a junior in high school and that the IHSAA's ruling would substantially impair her high school athletic career. These facts lead to the conclusion that Samantha's legal remedies were inadequate and that the enforcement of the ruling would cause her irreparable harm.

The IHSAA argues in footnote 8 of its appellants' brief that the threatened injury to the IHSAA members, in particular WCHS as a whole, outweighs any threatened harm to Samantha. In part, the IHSAA points to the IHSAA Restitution Rule, Rules 3–9 and 17–6. This Rule requires restitution in the event that an injunction, which allowed a student who was ineligible under the rules to participate, is later voluntarily vacated, stayed, reversed or finally determined to have been unjustified. Restitution may include forfeiture of games, return of individual or team awards, and return of funds received by schools in a tournament. In *Ind. High School Athletic Ass'n v. Avant*, 650 N.E.2d 1164 (Ind.Ct.App.1995), this Court specifically found this rule to be manifestly unreasonable, thereby upholding the trial court's decision prohibiting its enforcement against a student and member school. Additionally, the effect of Samantha's eligibility or ineligibility on WCHS girls' basketball program and its season competitors is too speculative in nature.

The IHSAA further contends that the trial court's ruling has an effect on the IHSAA's right to self-government. Decisions of the IHSAA, however, have long been held judicially reviewable even absent an expressed constitutional right. *See e.g., Haas v. So. Bend Comm. School*, 259 Ind. 515, 519, 289 N.E.2d 495, 497 (1972); *Avant*, 650 N.E.2d at 1167; *Schafer*, 598 N.E.2d at 547–550. Additionally, the trial court found that the IHSAA is a quasi-public institution and that there is an overriding public interest that it does not act arbitrarily in dealing with its member schools or their student athletes. Accordingly, this finding establishes that the public interest would not be disserved by granting Samantha injunctive relief from the enforcement of an arbitrary and capricious ruling by the IHSAA. The trial court did not abuse its discretion by preliminarily enjoining the enforcement of the IHSAA's ruling. The judgment of the trial court is affirmed.

Affirmed.

STATON and DARDEN, JJ., concur.