**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, Appellant–Defendant,**

v.

**Gabriele VASARIO, Appellee–Plaintiff.**

No. 45A03–9901–CV–16.

Court of Appeals of Indiana.

March 7, 2000.

Transfer Denied June 16, 2000.

Robert M. Baker, III, Johnson, Smith, Pence, Wright & Heath, LLP, Indianapolis, Indiana, Attorney for Appellant.

Michael L. Muenich, Highland, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Indiana High School Athletic Association (IHSAA), appeals the trial court's refusal to enforce IHSAA's Rule 19, otherwise known as the "Transfer Rule," against Gabriele Vasario (Vasario), a high school student who attended Lake Central High School as a foreign exchange student.

We reverse.

Appellant presents the following issues for our review which we restate as follows:

(1) Whether the trial court erred in determining that the IHSAA violated Indiana common law by denying Vasario full athletic eligibility;

(2) Whether the trial court erred when it held that the IHSAA's Transfer Rule violated Article 1, Section 23 of the Indiana Constitution; and

(3) Whether the trial court erred in denying the IHSAA attorney's fees and expenses pursuant to Ind. Trial Rule 65(C).

The facts reveal that in the spring of 1994, Vasario, a native of Italy, applied to a foreign exchange program called Academic–Year–in–America which was sponsored by the American Institute for Foreign Study Foundation (AIFS Foundation). Vasario was accepted into the program for the 1994–95 academic year and was subsequently assigned to Lake Central High School in Lake County, Indiana. In the summer of 1994, Vasar-

io moved to Crown Point, Indiana, to live with his host family.

Vasario is an accomplished swimmer, and was under the belief that he could competitively swim for Lake Central's varsity swimming team. There was no evidence, however, that Vasario came to Lake Central for athletic reasons. Lake Central is a member of the IHSAA, which is a voluntary association governing interscholastic athletic competition. For each school year, the IHSAA publishes a manual containing its Articles of Incorporation, By–Laws and Rules. This manual includes specific provisions governing the eligibility of athletes for participation in high school sports. Rule 19–6.1, one provision of the Transfer Rule, provides that a student who transfers schools without a change in residence by his or her parents is ineligible for interscholastic athletic competitions unless one or more of several enumerated exceptions is shown to exist. The Transfer Rule serves to discourage students who transfer to schools for athletic reasons and individuals who recruit students to a particular school to build athletic superiority.

One exception to the Transfer Rule is Rule 19–6.1(m), which provides that a foreign exchange student can have full eligibility if certain criteria are met. These criteria are listed in Rule 19–7 and include the requirement that the foreign exchange student is attending school under a foreign exchange program which is approved by both the IHSAA and the National Association of Secondary School Principals (NASSP). The only requirement which the NASSP demands of the foreign exchange program is that it be included in an advisory list [1] published by the Counsel on Standards for International Educational Travel (CSIET). CSIET has nine published standards, one of which requires that a program have *"direct, hands-on"* control

over the placement and supervision of its students. First Record at 314, Plaintiff's Exhibit 5 at 5. (Emphasis in original).[2] If a student attends a school under a program not so approved, the student may be granted limited eligibility, which amounts to participating at the junior varsity or freshman level of competition.

When Vasario applied to AIFS Foundation to become a foreign exchange student in the spring of 1994, the program met the criteria set out in Rule 19–7. Then, on May 3, 1994, CSIET wrote a letter to AIFS Foundation advising that the AIFS Foundation program would not be listed in the advisory publication. CSIET's disapproval resulted from AIFS Foundation assigning responsibility to another company, AIFS, Inc. Specifically, AIFS Foundation delegated the placement and supervision of students to AIFS, Inc., thus not meeting the requirement of "direct, hands on" control. First Record at 330, Plaintiff's Exhibit 6 at 2. AIFS Foundation appealed this ruling, but relief was apparently denied in the summer of 1994.

Vasario did not have any knowledge of AIFS Foundation being dropped from the advisory list before traveling to the United States, and it was not until late October when Vasario discovered that he was attending Lake Central under a program not approved for purposes of competing in interscholastic athletic events.

In November 1994, Vasario petitioned the IHSAA for full eligibility, but the IHSAA granted him limited eligibility, enabling him to compete only at the junior varsity level. Upon learning that AIFS Foundation was not an approved program, Vasario attempted, with the help of Lake Central's athletic director and swimming coach, to gain admission into an approved foreign exchange program. When these

---

**1.** This advisory list is officially entitled the Advisory List of International Educational Travel and Exchange Program.

**2.** For purposes of this opinion, the first appeal record is designated as "First Record." The third appeal record is designated as "Third Record." No reference is made to the second appeal record.

efforts did not prove successful, on February 9, 1995, Vasario asked the IHSAA to grant him a "hardship exception." First Record at 330, Plaintiff's Exhibit 6 at 3. The hardship exception of the Transfer Rule, found in Rule 17–8, allows the IHSAA to exercise its discretion and grant a student eligibility when none of the stated exceptions to the Transfer Rule apply and when strict enforcement of the rule would not serve to accomplish the goals of the rule. On February 10, 1995, Vasario's request for a hardship exception was denied.

On February 15, 1995, Vasario then filed for a temporary restraining order with the Lake County Superior Court and asked the court for declaratory and injunctive relief with respect to the IHSAA's ruling of ineligibility for the varsity level of competition. This complaint was filed, at least in part, to allow him to participate in the Sectional meet as part of the IHSAA state tournament. However, Vasario did not swim because he did not receive final word that he would be permitted to swim from Lake Central school officials until the Friday evening before the Saturday morning meet. Vasario did not feel he could take necessary measures, both physically and mentally, at that late time to prepare himself for the competition.

Vasario also challenged the substantive issue of eligibility in the suit. The trial court granted the restraining order, and dismissed the eligibility suit without prejudice after Vasario filed a motion for a voluntary dismissal. The IHSAA appealed the trial court's dismissal, asserting that the court did not have jurisdiction because it had granted the IHSAA's motion for change of venue from the judge before the suit was dismissed. The IHSAA wanted to litigate the matter so that if it was successful, it could claim attorney's fees as a result of wrongful enjoinder. Upon appeal, in an unpublished memorandum decision, this court remanded the case "to the trial court, for proceedings before the appropriate trial judge, to determine 'whether injunctive relief was warranted under the facts of the case.'" *IHSAA v. Vasario* (1995) Ind. App., 659 N.E.2d 266 (quoting *National Sanitary Supply Co. v. Wright* (1994) Ind.App., 644 N.E.2d 903, 906, *trans. denied*).

Upon remand, on March 19, 1996, the IHSAA renewed a motion to transfer to a county of preferred venue, Marion County. On February 24, 1997, the trial court denied this motion. The IHSAA appealed the denial to this court, and on October 8, 1997, this court dismissed the appeal as moot.

Also, Vasario filed suit in federal court, claiming that the IHSAA violated the Fourteenth Amendment to the United States Constitution and Article 1, Section 23 of the Indiana Constitution in its ruling denying Vasario full athletic eligibility. *See Vasario v. IHSAA & American Instit. for Foreign Study Found.* (March 12, 1997) N.D.Ind., No.2:95CV–105–JM. The district court granted summary judgment in favor of the IHSAA on both the federal and state constitutional claims and entered final judgment in favor of the IHSAA.

On December 8, 1997, a trial on the merits and on the IHSAA's claim for fees as a result of wrongful enjoinder was finally conducted. The IHSAA requested specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. After the parties submitted proposed findings to the trial court, the trial court issued its findings on July 2, 1998.

The trial court determined that the IHSAA's requirement that foreign exchange programs be recognized by an advisory list bears no relationship to the purpose of the Transfer Rule which is to prevent recruitment and transferring for athletic reasons. The trial court specifically found that denying Vasario eligibility had "no rational connection to further [the] IHSAA's interest in minimizing recruiting and proselytizing," especially when there was no evidence that Vasario had enrolled at Lake Central for athletic reasons.

Third Record at 348. The court next found that the Transfer Rule "as it applies to Vasario, is arbitrary and capricious...." Third Record at 348. The court reasoned that the circumstances of Vasario's case justified granting a hardship exception, which the IHSAA failed to issue. The court finally concluded that the injunction awarded to Vasario was warranted under the facts of the case and denied the IHSAA's claim for attorney fees and expenses.

■ Our standard of review for findings of fact and conclusions of law issued pursuant to T.R. 52 is one of deference. *Town & Country Ford, Inc. v. Busch* (1999) Ind.App., 709 N.E.2d 1030, 1032. We will not set aside a judgment unless it is clearly erroneous. *Id.* We will review the evidence and all reasonable inferences therefrom in a light most favorable to the judgment

■ The question of which standard of review to apply to IHSAA decisions has been the subject of much litigation. *Indiana High School Athletic Ass'n, Inc. v. Carlberg* (1997) Ind., 694 N.E.2d 222, 228, *trans. denied.* The Indiana Supreme Court held that with respect to student challenges to IHSAA rulings, as a matter of state common law, courts have the jurisdiction to review challenges to IHSAA rules and enforcement decisions, and the courts should apply an arbitrary and capricious standard in their review. *Id.* at 231. Our Supreme Court reasoned in *Carlberg* that although the IHSAA is not a government agency, the decisions made at the administrative level are analogous to those of a government entity and that therefore the common law standard of review should be the same. *Id.*

## I. Indiana Common Law

Upon appeal, the IHSAA asserts that the trial court erred in finding that the IHSAA violated Indiana common law when it denied Vasario full eligibility. Specifically, the IHSAA asserts that six of the

trial court's findings of fact and conclusions of law are contrary to the facts and contrary to the law. These allegations of error are best explained within the context of our Supreme Court's decision in *Carlberg, supra,* 694 N.E.2d 222.

In *Carlberg,* the court upheld the validity of the IHSAA's Transfer Rule after a student challenged a decision made by the IHSAA holding him ineligible. The student attended a private school and competed on the varsity swimming team. For academic reasons, the student transferred to a public school and applied for immediate, full athletic eligibility. The IHSAA granted him limited eligibility, and the student sought an injunction which the trial court granted. The IHSAA appealed to the Indiana Court of Appeals, and this court found one issue dispositive. We followed *Sturrup v. Mahan* (1974) 261 Ind. 463, 305 N.E.2d 877 in our holding that the IHSAA Transfer Rule was overbroad in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because the rule denied varsity eligibility to a student who transferred for reasons unrelated to athletics. *See Indiana High School Athletic Ass'n, Inc. v. Carlberg* (1996) Ind.App., 661 N.E.2d 833.

■ Upon transfer, our Supreme Court reversed. The IHSAA Transfer Rule states that when a student changes schools without his parents changing their residence, he or she may not play varsity athletics unless an exception applies. The student, however, did not argue that he fit within an exception to the Transfer Rule. Rather, he asserted that "the IHSAA acted arbitrarily and capriciously when it enforced the Transfer Rule against him where it was undisputed that his transfer was neither primarily for athletic reasons nor as a result of undue influence." *Carlberg, supra,* 694 N.E.2d at 232. The court explained that the arbitrary and capricious standard of review is narrow, and the reviewing court may not substitute its judgment for that of the IHSAA. *Id.* at 233.

A ruling "will be found to be arbitrary and capricious 'only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.'" *Id.* (quoting *Dep't of Natural Resources v. Indiana Coal Council, Inc.* (1989) Ind., 542 N.E.2d 1000, 1007, *cert. denied* ).

The court then concluded that the IHSAA's denial of full eligibility was not arbitrary and capricious because there was no evidence that the IHSAA failed to publicize its interpretation of the rule or that the IHSAA failed to apply its interpretation of the rule consistently. *Carlberg, supra,* 694 N.E.2d at 233. The court emphasized that the Transfer Rule deters athletically motivated transfers disguised as transfers in the best interests of the student by establishing objective eligibility standards for awarding only limited eligibility for transfers made without a parent's change of residence. *Id.*

The court also held that the Transfer Rule does not sweep too broadly in its proscription, reasoning that although some students who do not transfer for athletic reasons may be denied full eligibility, "conducting a factual inquiry into the motivation for every transfer would impose a considerable burden on both the IHSAA and its member schools." *Id.* Investigating each case individually would not only be expensive, the investigations could not be staffed by current IHSAA personnel and there would not be great success in identifying athletic transfers disguised as non-athletic transfers. *Id.* The court recognized that the IHSAA has attempted to deal with these problems by establishing the exceptions to the Transfer Rule listed in Rule 19–6.1, including a hardship exception, and permitting students to have limited eligibility at the junior varsity and freshman level of competition. After these considerations, the court concluded that the IHSAA's application of the Transfer Rule was not arbitrary and capricious. *Id.*

at 233–34. The court also decided that the Transfer Rule was consistent with its purpose to prevent athletic recruiting and school jumping. *Id.* at 234.

Applying the standards enunciated in *Carlberg,* we are bound to hold that the conclusions of law challenged by the IHSAA are clearly erroneous because the trial court failed to comply with the arbitrary and capricious standard when it reviewed the IHSAA ruling with respect to Vasario. Specifically, the IHSAA challenges the trial court's finding that it violated common law in the following numbered conclusions of law:

"2. In applying Rule 19–7 to Vasario, the IHSAA failed to follow its own rules because its list of 'approved' foreign exchange programs is not based on whether the programs actually meet the criteria of Rule 19–7, but is instead based arbitrarily and conclusively on whether the CSIET included the program on its Advisory List.

\* \* \*

8. Vasario's enrollment at Lake Central was not the result of any recruitment, proselytizing, or school-jumping for athletic reasons. The denial of eligibility to Vasario is not supported by the facts.

9. IHSAA Rule 19, as it applies to Vasario, is arbitrary and capricious, inasmuch as he has been denied an opportunity to participate in varsity athletic competition through no fault of his own, namely, CSIET's refusal to include Vasario's sponsoring organization on the Advisory List. Thus, IHSAA rules, as they apply to Vasario are not fair and penalize him in a way that the rules never intended.

10. Allowing Vasario to swim at Junior/Varsity level, but not at Varsity level has no basis in common sense. It is arbitrary and capricious.

\* \* \*

12. IHSAA Rule 19–7, as promulgated, lends itself to arbitrary and inconsistent enforcement because the IHSAA list of approved programs is not related to whether the program meets the objective criteria listed in Rule 19–7.2. Thus, Rule 19–7.2[3] affords the IHSAA the unreasonable and arbitrary power to approve programs based on its own subjective and undisclosed criteria and precludes affected persons from conforming their conduct to meet the requirements of the rule.

\* \* \*

15. Strict enforcement of the Rule 19–7 in this case will not serve to accomplish the purpose of the Rule. The spirit of Rule 19–7 has not been violated by Vasario and would not be violated by Vasario's participation in interschool athletics. There exists in this case circumstances showing an undue hardship which would result from enforcement of Rule 19–7. Immediate and irreparable injury will result to Vasario if Vasario is not immediately granted an injunction ordering IHSAA to declare him eligible to participate in the interschool athletics during the pendency of this litigation. Any failure by Vasario to meet the technical eligibility requirements of IHSAA Rule 19–7 was beyond the control of Vasario and his parents or host family." Third Record at 347–49.

■ These findings do not comport with the arbitrary and capricious standard as interpreted by *Carlberg*, and which the

trial court was required to apply to the IHSAA's ruling. With respect to the findings which criticize the IHSAA's reliance on the CSIET publication, IHSAA Rule 19–7.1 requires that the foreign exchange program be approved by both the IHSAA and the NASSP, which mandates that the program be listed in CSIET's advisory list. Again, under the holding of *Carlberg*, to prove that it was arbitrary and capricious for the IHSAA to use CSIET's advisory list to make an eligibility decision, Vasario would have to prove that it acted willfully and unreasonably and did not apply the standards listed in the rule. However, the criteria listed for the IHSAA to approve foreign exchange programs in Rule 19–7.2 attempt to insure that a foreign exchange program does not have the opportunity to influence an assignment of a student for athletic purposes. One of CSIET's requirements for listing programs is that the program have direct control over placements. The IHSAA's reliance upon the CSIET publication, therefore, is not arbitrary and capricious, especially, in light of the fact that AIFS Foundation lost its approval due to a lack of control over placements. It is reasonable to require the program to have complete control over its placements to prevent others from exerting influence. We are not at liberty to hold that using the CSIET's refusal to list the AIFS Foundation as decisive evidence is arbitrary and capricious.

■ The findings made by the court which hold that the IHSAA acted arbitrarily and capriciously because there was no evidence of athletic recruitment in Va-

---

**3.** Rule 19–7.2 reads: "[a] foreign exchange program, to be approved by the Association:
 a. shall be under the auspices of an established national corporation, a not-for-profit corporation or organization or a national civic organization;
 b. must assign students to schools by a method which insures that no student, school or other interested party may influence the assignment for athletic purposes;
 c. must assign students to attend one member school for a minimum of one school year;

 d. must consult with the member school principal prior to placement of a student in a school;
 e. must be able to certify the student's participation in interschool athletics in his/her home country;
 f. must not select or place the student based on his/her athletic interest or abilities.
 A list of approved NASSP and Association programs will be provided annually." First Record at 309, Joint Exhibit 1 at 56.

sario's case are also erroneous. The Transfer Rule no doubt penalizes Vasario by not allowing him to participate at the varsity level of competition. However, the clear message of *Carlberg* is that the IHSAA cannot be expected to inquire into each student's particular circumstances to decide whether the transfer was motivated by athletic reasons. The IHSAA has arguably made efforts to keep the spirit of the rule from sweeping too broadly in its proscription. One example is granting limited eligibility. Limited eligibility is directly related to the IHSAA's efforts to curb athletic recruitment and school jumping, without completely preventing student athletes from participating. Typically, schools do not recruit for the junior varsity and freshman level. Therefore, the IHSAA's grant of limited eligibility to Vasario is not arbitrary and capricious.

■ Finally, the IHSAA alleges error in the trial court's finding that the IHSAA's refusal to apply the hardship exception to Vasario's case was arbitrary and capricious. We share the trial court's disapproval of the failure of the IHSAA to grant Vasario a hardship exception. Vasario's situation seems to epitomize the reason the hardship exception was created. At the time Vasario applied to AIFS Foundation, it was approved in CSIET's publication or at least it represented itself as approved. It was not until the fall when Vasario finally learned that AIFS Foundation was no longer approved, due to problems with subcontracting some of its placement duties. Also, there was no evidence that Vasario transferred from Italy to Lake Central for athletic purposes.[4]

Despite our reservations about the IHSAA's refusal to grant Vasario a hardship exception, we are bound to follow our Supreme Court's decision in *Carlberg,* and we do not find that the IHSAA's decision rose to the level of willful and unreasonable decision making without any basis or consideration of the circumstances. The IHSAA purportedly exercised its discretion in refusing to grant Vasario a hardship exception. Very recently, our Legislature has indicated that the IHSAA not have this virtually unreviewable discretion.[5]

## II. Indiana Constitution

The IHSAA contends that the trial court's decision that the Transfer Rule, as applied to Vasario, violated Article 1, Section 23 of the Indiana Constitution is clearly erroneous. Article 1, Section 23, the Privileges and Immunities Clause, states: "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The IHSAA maintains that because the federal district court granted summary judgment in favor of it in a suit brought by Vasario alleging this same Indiana constitutional claim, the trial court in the state dispute was bound by that ruling.

■ "Collateral estoppel may bar the subsequent re-litigation of the same fact or issue which was necessarily adjudicated in a prior lawsuit." *Kimberlin v. DeLong* (1994) Ind., 637 N.E.2d 121, 125, *cert. denied.* In the case before us, the IHSAA wishes to apply defensive collateral estoppel. Defensive collateral estoppel occurs when a defendant in litigation

4. In its holding that the IHSAA need not be concerned with actual recruitment or transfers for athletic reasons, the *Carlberg* decision could be construed as a blanket prohibition against all transfers because some transfers may be motivated by athletic interests. This approach to determinations of athletic eligibility may also render the hardship exception virtually meaningless and may account for a reluctance by the IHSAA to grant such exceptions.

5. As noted in Judge Baker's separate opinion, new legislation passed both houses of the General Assembly and is now awaiting signature by the Governor. It provides for a system of administrative appellate review of IHSAA decisions. If duly enacted, it will become effective July 1, 2000.

wishes to keep the plaintiff from re-litigating an issue which has already been decided in the defendant's favor in another action. *Slutsky v. Crews* (1999) Ind.App., 713 N.E.2d 288, 291. In determining whether defensive collateral estoppel is appropriate, "the court must consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.*

■ Here, in a suit brought by Vasario in federal court claiming his federal and state constitutional rights had been violated by the IHSAA's ruling, the district court held in its summary judgment order that under the analysis in *Collins v. Day,*[6] the IHSAA's Transfer Rule did not violate Article 1, Section 23. Vasario, in his brief, "concedes the preclusive effect of the federal court decision denying his constitutional claims...." Appellee's Brief at 13. We, therefore, hold that the trial court erred when it found that the IHSAA had violated Article 1, Section 23 of the Indiana Constitution. We note, however, that by giving the federal court's decision preclusive effect, we are not negating the possibility of reaching a result seemingly different from that reached by a federal court under other circumstances.

### III. Wrongful Enjoinder

■ Finally, the IHSAA maintains that the trial court erred in denying it attorney's fees incurred as a result of wrongful enjoinder stemming from the restraining order issued which kept the IHSAA from enforcing its eligibility decision. The grant or denial of injunctive relief rests within the equitable discretion of the trial court and we will reverse only

if the trial court's action constitutes a clear abuse of discretion. *Indiana High School Athletic Ass'n, Inc. v. Wideman* (1997) Ind.App., 688 N.E.2d 413, 416, *trans. denied.*

■ To determine if preliminary injunctive relief is warranted, the trial court considers (1) whether the movant's remedies at law are inadequate; (2) whether the movant has demonstrated a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the movant outweighs the potential harm the grant of the injunction would occasion on the nonmovant; and (4) whether the public interest will be disserved by granting relief. *Id.*

■ Under T.R. 65(C), a party may recover fees and expenses incurred as a result of a wrongful enjoinder. That rule provides:

> "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of a governmental organization, but such governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

T.R. 65(C) is an exception to the American Rule which makes parties responsible for their own attorney's fees. *National Sanitary Supply Co. v. Wright* (1994) Ind.App., 644 N.E.2d 903, 905. The reason for requiring security relates to the expeditious

---

6. In *Collins,* (1994) Ind., 644 N.E.2d 72, 80–81, our Supreme Court determined that, unlike federal equal protection analysis, the same level of scrutiny should be applied to all grants of unequal privileges or immunities. This level of scrutiny requires that the disparate treatment be reasonably related to inher-

ent characteristics which distinguish unequally treated classes. The challenger must negative every reasonable basis for the classification. Also, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

manner in which the preliminary injunctive relief is issued and to the lack of a full hearing upon the facts. *Id.*

 The test for reviewing whether an injunction was wrongfully issued is not whether the injunction was ultimately dissolved, but whether injunctive relief was warranted under the facts of the case. *Id.* "A defendant's entitlement to attorney fees and costs under T.R. 65(C) arises when he proves that it has been finally or ultimately determined that injunctive relief was not warranted on the merits." *Id.*

 In the present case, bound by *Carlberg,* we have held that the trial court's findings of fact and conclusions of law were clearly erroneous. In following the *Carlberg* decision, we have concluded upon the merits that the IHSAA did not act arbitrarily and capriciously when it denied Vasario full athletic eligibility. Given this determination, we hold that the trial court erred in not granting the IHSAA's claim for attorney's fees incurred as a result of defending the injunction. T.R. 65(C) requires us to award attorney's fees to a party "who is found to have been wrongfully enjoined...."

We share the trial court's concern that the IHSAA may have been motivated to run up fees and expenses during the course of this litigation. We further fear that the IHSAA might wish to send a message to parents and student athletes in Indiana about the great risk and expense involved in challenging a ruling, and thus discourage them from appealing a denial of eligibility. The trial court expressed this fear well in its finding which states:

"This proceeding is and has been for some time moot. IHSAA has persisted by repeated appeals and motions to inflate its costs, fees, and expenses in an attempt to drive the cost of litigation to Vasario as high as possible, thereby discouraging students similarly situated from similar conduct. There is no other plausible explanation for a record of the size before this court, multiple hearing (sic), two interlocutory appeals, and an evidentiary hearing to recover attorney fees upon a temporary restraining order that expired February 26, 1995, nearly two years ago, and to resist Vasario's repeated attempts to dismiss these proceedings as moot." Third Record at 349.

We remand to the trial court to determine the amount of expenses, if any, and fees which the IHSAA should recover. Of course, the trial court, within its discretion, need only award the sum it feels was properly incurred as a result of defending the injunctive relief as opposed to fees and expenses generated by the entire course of the litigation.

The judgment is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

STATON, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part

I concur with the majority regarding the constitutional claims in this case, as general principles of res judicata and collateral estoppel compel me to agree that the litigation in federal court resolved such issues. However, I respectfully dissent with regard to the majority's application of the arbitrary and capricious standard in reviewing the underlying IHSAA decisions at issue here. I dissent as well regarding the majority's conclusion that the IHSAA was wrongfully enjoined and its remand to the trial court for an assessment of expenses and fees.

To me, this case concerns notions of fundamental fairness and fair play. I would note that the IHSAA is not a voluntary organization for students subject to its decisions. Rather, students who have no voice in the IHSAA must abide by its rules or be deprived of the right to enter into sports activities at the level which their skills merit. The importance of this

case, for me, lies in the fact that students learn at the hands of the IHSAA some of their early lessons about what constitutes fair play in decision-making. Unfortunately, students acquainted with the IHSAA's conduct in this case might reasonably conclude that winning at all costs is more important than fair play.[7]

As our supreme court noted in *Indiana High School Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 233 (Ind.1997), we review IHSAA decisions under an "arbitrary and capricious" standard, which is indeed a narrow one. However, it is not entirely empty. A decision is arbitrary and capricious when "it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion." *Id.*

In this instance, I would first note that we review the IHSAA's decision here only to decide whether it was wrongfully enjoined. To do so, we must determine whether Vasario established a likelihood of success on the merits.[8] This determination entails the need to review the underlying decisions of the IHSAA. I would note as well that trial court findings, including preliminary injunctions, are to be reversed only if they are clearly erroneous. Ind. Trial Rule 52(A); *National Sanitary Supply Co. v. Wright*, 644 N.E.2d 903, 906 (Ind.Ct.App.1994).

In deciding whether the IHSAA's decision was arbitrary and capricious, I would observe that if any conceivable problem qualifies for a hardship exception, the problems encountered by Vasario do: they were beyond the control of his school, his family, and himself. None argue in this case that Vasario even understood that his program had been disqualified from any

list deemed important by the IHSAA before he was already attending school in Crown Point.

As the majority correctly observes, "Vasario's situation seems to epitomize the reason the hardship exception was created." Op. at 333. To my mind, this ultimately means that the refusal to grant a hardship exception in this case was arbitrary and capricious as that standard is defined. The majority has in effect found no basis whatsoever for the IHSAA's decision which would lead a reasonable and honest person to the same conclusion. Instead, in my view, the majority has interpreted *Carlberg* to mean that the IHSAA's refusal to grant a hardship exception is simply unreviewable. I do not think that this is the standard which our supreme court meant to impose. As a result, I would find that the trial court did not err in finding that the IHSAA's refusal to grant a hardship exception was arbitrary and capricious, and that the trial court properly awarded preliminary injunctive relief after considering the criteria, cited by the majority, for granting such a remedy. Op. at 334.

Finally, with regard to the IHSAA's request for attorneys fees, I respectfully disagree that we must remand to the trial court so that it may determine what expenses and fees were reasonably incurred during in the IHSAA's continuation of this case. On this, the trial court has spoken. It found that the maintenance of the suit was, in essence, unwarranted and that it constituted an obvious attempt to discourage other students from appealing IHSAA decisions. R. at 349. I would thus find the IHSAA undeserving of attorneys fees.

I would remand, however, for a different reason. I would find that, under IND.CODE § 34–52–1–1 and Ind. Appellate Rule

---

7. I would note that public consensus over the issue of fair play has recently led to a legislative bill, passed by both houses of our legislature, which would guarantee a new review system for appealing IHSAA decisions. H. 1018, 111th G.A., 2nd Sess. (Ind.2000).

8. The trial court must consider other criteria as well before granting an injunction, and these are cited by the majority. Op. at 334. However, I understand the dispute here to be *essentially* over whether Vasario had a case likely to succeed at trial.

15(G), this is a frivolous appeal. I would remand with instructions that fees should be assessed against IHSAA because of the multiple indications of bad faith which characterize its pursuit of this case, including its repeated refusal to allow the case to be dismissed, as Vasario requested five years ago and at several points thereafter.