**JAY COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Appellant–Plaintiff,**

**v.**

**WABASH VALLEY POWER ASSOCIATION, INC. and Kosciusko County Rural Electric Membership Corporation, Appellees–Defendants.**

No. 33A04–9706–CV–260.

Court of Appeals of Indiana.

March 16, 1998.

Don F. Morton, Kent M. Frandsen, Parr Richey Obremskey & Morton, Indianapolis, David L. Copenhaver, Scotten & Hinshaw, New Castle, Lee A. Freeman, Jr., John F. Kinney, Freeman, Freeman & Salzman, Chicago, IL, for Appellees–Defendants.

Frank W. Hunger, Assistant Attorney General, Judith A. Stewart, United States Attorney, Jeffrey L. Hunter, Assistant United States Attorney, J. Christopher Kohn, Sandra P. Spooner, Mary Nell McGarity Clark, United States Department of Justice, Washington, DC, for Amicus Curiae.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Jay County Rural Electric Membership Corporation (Jay County) appeals the trial court's grant of a preliminary injunction in Jay County's action against Wabash Valley Power Association, Inc. (WVPA) and Kosciusko County Rural Electric Membership Corporation.

We affirm.

### ISSUE

Jay County raises a multi-part issue for our review, which we state as: whether the trial court erred in issuing the preliminary injunction requested by WVPA.

### FACTS AND PROCEDURAL HISTORY

Jay County is a rural electric membership corporation organized under the Indiana REMC Act. It purchases wholesale electricity and distributes it at retail to about 5100 member-customers. WVPA is an electric generation and transmission cooperative organized under the Indiana Nonprofit Corporations Act. It sells wholesale electricity to its twenty-four member systems and to certain non-members. WVPA was formed to allow relatively small entities to combine their power requirements to achieve leverage to invest in generation and transmission assets and to obtain long-term sources of reasonably priced power. Both Jay County and WVPA operate as nonprofit corporations.

John F. Wickes, Jr., Todd A. Richardson, Pamela H. Sherwood, Lewis & Kappes, Indianapolis, for Appellant–Plaintiff.

Prior to joining WVPA, Jay County purchased its electricity requirements from Indiana & Michigan Electric Company ("I & M"), an investor-owned utility serving the area in which Jay County was located. In October of 1974, I & M notified Jay County that it would continue to provide electricity only if Jay County agreed to new terms and conditions. Jay County investigated alternative suppliers and determined that membership in WVPA would be more cost efficient than continuing a relationship with I & M.

Jay County became a WVPA member under an all-requirements wholesale power supply contract (the "all-requirements contract") that it signed with WVPA. The contract, which was signed on March 7, 1977, requires Jay County to purchase all of its power and energy requirements for its system from WVPA to the extent that WVPA has power and energy available.[1] The contract provides that WVPA's wholesale rates are to be set by a Board of Directors composed of one representative for each member system (including Jay County), subject to approval by the Indiana Utility Regulatory Commission. Revenues collected by WVPA in excess of its costs are allocated among the members in the form of "patronage capital" accounts.

The all-requirements contract was developed by the Rural Electrification Administration, now known as the Rural Utilities Service (hereinafter, "RUS"), as the principal collateral for over forty billion dollars in loans and loan guarantees that RUS has provided to cooperatives across the country for the last sixty years. The all-requirements contract between WVPA and each of its members allows the members to develop, purchase, and secure generation and transmission resources without having to provide individual guarantees for the financing extended to WVPA. WVPA members thus assumed the obligation to purchase their entire power requirements from WVPA to obtain the benefit of receiving a long-term source of reliable and reasonably priced power.

In December of 1996, Jay County advised WVPA that it was not nominating a representative to serve on the WVPA Board of Directors during 1997. Subsequently, Jay County sent notices purporting to withdraw its membership in WVPA and to terminate the all-requirements contract with WVPA. It then filed a complaint against WVPA, which in part asked the trial court to declare its withdrawal and termination valid. It also negotiated a contract with Cinergy that would guarantee better prices for electricity. WVPA moved for a temporary restraining order and preliminary injunction to require Jay County to purchase its wholesale electricity exclusively from WVPA during the pendency of the litigation. The trial court issued a preliminary injunction requiring Jay County to continue purchasing its power requirements from WVPA until final judgment or further court order.[2] The injunction also required WVPA to maintain a million dollar bond that had been posted in connection with the previously granted temporary restraining order.

Pursuant to Ind.Appellate Rules 2(A) and 4(B)(3), Jay County timely initiated an interlocutory appeal of the trial court's issuance of the preliminary injunction. The trial court approved Jay County's petition for appeal.

### DISCUSSION AND DECISION

The grant or denial of a preliminary injunction lies within the sound discretion of the trial court. *Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc.,* 637 N.E.2d 1306, 1311 (Ind.Ct.App. 1994), *reh'g denied.* We will not interfere with the exercise of that discretion unless it is shown that the trial court's action was arbitrary or constituted a clear abuse of discretion. *Id.* In reviewing the trial court's action, we will not weigh conflicting evidence,

---

1. The contract was originally intended to cover a forty year term. By supplemental agreement in 1982, however, the parties extended the term. The contract will expire in 2028.

2. Ind.Trial Rule 53(A)(1) requires a trial court to make special findings without request when it grants or denies a preliminary injunction. The findings of fact and conclusions of law in the present case are extensive, and the trial court is commended for its excellent work. The court's thorough special findings enabled this court to conduct its review efficiently.

but will consider only the evidence supporting the trial court's findings, conclusions of law, and order. *College Life Insurance Co. of America v. Austin,* 466 N.E.2d 738, 744 (Ind.Ct.App.1984). The trial court's findings do not support the judgment where they are clearly erroneous or insufficient to disclose a valid basis for the legal result reached by the judgment. *Fumo v. Medical Group of Michigan City, Inc.,* 590 N.E.2d 1103, 1107 (Ind. Ct.App.1992), *reh'g denied, trans. denied.* The findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* at 1107–08. The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: (1) whether the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action if the injunction does not issue; (2) whether the movant has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the movant outweighs the threatened harm the grant of the injunction would occasion upon the nonmovant; and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Xantech Corp. v. Ramco Industries, Inc.,* 643 N.E.2d 918, 921 (Ind.Ct.App.1994). If the movant fails to prove any one or more of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.* We examine the trial court's findings and conclusions as they pertain to each requirement.

### 1. Adequacy of Legal Remedy

▮ Jay County contends that the trial court erred in concluding that WVPA's legal remedy was inadequate and that WVPA would have suffered irreparable harm if the preliminary injunction had not been granted. Jay County characterizes the harm to WVPA as economic injury and cites cases which hold that "mere economic injury" is not sufficient harm to support the grant of a preliminary injunction. *See, e.g., Whiteco Industries, Inc. v. Nickolick,* 549 N.E.2d 396, 399 (Ind. Ct.App.1990); *Wells v. Auberry,* 429 N.E.2d 679, 684 (Ind.Ct.App.1982). Jay County reasons that WVPA can be fully compensated through payment of damages for any injury

that it may suffer during the pendency of the adjudication of this matter. Thus, it reasons that payment of damages is an adequate remedy.

▮ The object of a preliminary injunction is "to maintain the status quo pending adjudication of the underlying claim." *Wells,* 429 N.E.2d at 683. The necessity of maintaining the status quo is to prevent harm to the moving party which could not be corrected by a final judgment. *Id.* "If irreparable injury were to occur during the course of litigation, the judgment, in effect, would be rendered meaningless. Thus, it has been held that an injunction will not be granted where the law can provide a full, adequate, and complete method of redress." *Id.*

▮ A legal remedy is adequate only where it is as "plain, complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *McKain v. Rigsby,* 250 Ind. 438, 237 N.E.2d 99, 103 (1968). The trial court has a duty to determine "whether the legal remedy is as full and adequate as the equitable remedy." *Id.*

▮ Stated simply, a party which suffers only "mere economic injury" is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole. However, a party which suffers economic injury that cannot be remedied by post-trial damages is entitled to injunctive relief.

In the present case, the trial court concluded that "quantification of WVPA's damages in this cause would be extremely difficult and there is a likelihood that WVPA's legal remedy as a consequence, is inadequate." The court further concluded that WVPA's "remedy of law is inadequate in that Jay County would have insufficient liquid assets, and/or insufficient non-liquid assets against which it might obtain funding, to pay an award of damages to WVPA in this cause." (R. 921). We address the latter conclusion, as it is dispositive.

The trial court found that WVPA would have lost four million dollars in revenue in

1997 if the preliminary injunction would not have been granted. Possible rate adjustments would decrease the damages to 1.9 million in 1997 and 1.7 million in 1998. The trial court also found that Jay County had approximately thirteen million dollars in assets and 1.5 million dollars in liabilities. Jay County also had approximately $500,000 in liquid assets and 1.1 million dollars in the patronage capital account currently held by WVPA. The trial court further found that RUS held a security interest in Jay County's entire system.

The trial court noted that Jay County considered its assets as sufficient to secure a loan to pay any damages owed to WVPA or, if no loan could be secured, to sell for cash. The court concluded, however, that the value of the assets was contingent upon "their use in an existing and functioning system for transmission and distribution of electric power." (R. 903). The court also concluded that a sale of Jay County assets to satisfy RUS liens would be precipitated if a prospective lender of funds insisted upon a lien on all Jay County assets to secure any loan made to pay damages. The trial further concluded that Jay County's patronage capital account was not a ready source of funds under the statute, contract provisions, and case law pertaining to their use.

█ A judgment for damages arising during the pendency of jurisdiction is rendered meaningless when the collection of damages by the injured party is impossible, uncertain, or unusually difficult. *See Tri–State Generation and Transmission Association, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986) (holding that difficulty in collecting a damage judgment supported a claim of irreparable injury where a state law may have prevented direct collection); *Central States, Southeast & Southwest Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.*, 511 F.Supp. 38, 43 (D.Minn.1980), *aff'd per curiam sub nom. Central States, Southeast & Southwest Areas Pension Fund v. Jack Cole–Dixie*

*Highway Co.*, 642 F.2d 1122 (8th Cir.1981) (holding that injury may be irreparable if defendants will be financially unable to pay damages); *Philipp Brothers Division of Engelhard Minerals & Chemicals Corp. v. El Salto, S.A.*, 487 F.Supp. 91, 95 (S.D.N.Y.1980) (holding that difficulty in collecting a money judgment may support a claim of irreparable harm). The trial court ultimately concluded in the present case that WVPA will not be able to, or will have great difficulty in, collecting a judgment from Jay County and that the inability to collect the judgment constitutes irreparable harm. We find that the trial court was within its discretion in arriving at this conclusion.[3]

### 2. Likelihood of Success at Trial

█ Jay County contends that the trial court erred in concluding that WVPA would likely succeed at trial. Jay County offers three rationales for its contention: (a) anticipatory repudiation; (b) mutual mistake; and (c) WVPA's failure to comply with statutory preconditions for conducting business. We address these three rationales, along with the question of the appropriateness of specific performance, below.

### A. Anticipatory Repudiation

Jay County contends that the trial court erred in concluding that WVPA did not repudiate its all-requirements contract with Jay County. Jay County argues that WVPA repudiated the contract when it notified Jay County of its desire to merge with another cooperative, Hoosier Energy.

█ When one party to an executory contract repudiates the contract and refuses to be bound by it, the injured party has the right to elect and pursue any of several remedies. Ind.Code 26–1–2–610; *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1080 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* One of the remedies that the injured party may elect is to rescind the contract and seek damages. *Scott–Reitz Ltd. v. Rein Warsaw Associates,*

---

**3.** Jay County raises the question of the appropriateness of specific performance under the factor of adequacy of legal remedy. As the trial court recognized in its findings of fact, this question pertains to two factors, adequacy of legal remedy and likelihood of success on the merits. We address the question within our analysis of the latter factor.

658 N.E.2d 98, 103 (Ind.Ct.App.1995). Repudiation of a contract must be positive, absolute, and unconditional in order that it may be treated as an anticipatory breach. *Eden United, Inc. v. Short,* 573 N.E.2d 920, 929 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* Because the doctrine of anticipatory repudiation represents a harsh remedy, the requirement that the repudiating statement be clear and absolute is a strict one. *City of Fairfax v. Montgomery County,* 582 F.2d 1321, 1326 (4th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *Commonwealth Edison Co. v. Decker Coal Co.,* 612 F.Supp. 978, 981 (N.D.Ill.1985).

In the present case, the trial court found that WVPA began having conversations with Hoosier Energy in late 1996 about the possibility of a merger. These conversations resulted in a proposed "intent to merge" resolution made available to Jay County in early February, 1997. At that time, Jay County was informed that WVPA and Hoosier Energy would consider adoption of the resolution at their February board meetings. On February 8, 1997, Jay County decided to formally terminate its corporate and contractual relationship with WVPA, and it sent a letter communicating that decision to WVPA prior to a WVPA board meeting on February 10, 1997. The boards of both WVPA and Hoosier Energy did pass the "intent to merge" resolutions on February 10, 1997. Jay County filed its suit three days later.

The trial court also found that no definitive plan of merger had been prepared by WVPA and Hoosier Energy and that no approval to merge had been sought from RUS. The court found that WVPA and Hoosier Energy later put merger discussions on indefinite hold because of concerns raised by RUS concerning the assignability of the all-requirements contracts.

The trial court concluded that at the time Jay County treated the all-requirements contract as terminated, WVPA had not communicated a positive, absolute, and unconditional repudiation of the contract. The court ultimately concluded that there was a likelihood that WVPA would prevail at trial on this issue. The trial court was well within its discretion in so concluding, as questions remain as to (1) whether Jay County prematurely reacted to WVPA's preliminary statements of intent to merge; (2) whether a merger would actually constitute a repudiation of the all-requirements contract; and (3) whether Jay County read "repudiation" into WVPA's intentions because it wanted out of the contract in order to preserve its more favorable contract with Cinergy.

Jay County also argues that the trial court erred in determining that WVPA provided the "adequate assurance of performance" required by Ind.Code 26–1–2–609, which provides that when "reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance. . . ." The trial court found that Jay County did write to WVPA and demand assurance of performance. The written communication demanded that WVPA assure Jay County either that merger discussions had ceased or that WVPA would be able to perform all of its obligations under the all-requirements contract. WVPA responded by referring to the second demand.

The trial court concluded that it was questionable that Jay County could avail itself of the provisions of Ind.Code 26–1–2–609 because the written communication was dated six days after Jay County filed this suit and because it was "amply clear" that Jay County's intent was to withdraw its membership from WVPA. (R. 918). The court further concluded that it was likely that WVPA's response to Jay County's demand for assurance would be deemed at trial to be "adequate under the circumstances." (R. 919). We hold that the trial court acted within its discretion because the timing and content of the demand arguably lead to the conclusion that the demand was not the type referred to in Ind.Code 26–1–2–609. We further hold that even if the demand was the type referred to in Ind.Code 26–1–2–609, WVPA's response was adequate to meet the requirements of the statute.

### B. Mutual Mistake

Jay County contends that the trial court erred in concluding that WVPA would likely prevail on the question of whether the all-requirements contract is voidable because of

a purported mutual mistake of fact. Jay County argues that a material feature of the all-requirements contract was both parties' understanding that WVPA's involvement in Marble Hill would result in more reliable and economical power, an understanding that constituted a mutual mistake.[4]

Mutual assent is a prerequisite to the creation of a contract. *Wilkin v. 1st Source Bank,* 548 N.E.2d 170, 172 (Ind.Ct. App.1990). However, "where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if, because of the mistake, a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Jackson v. Blanchard,* 601 N.E.2d 411, 416 (Ind.Ct.App.1992). "It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is 'of the essence of the agreement, the sine qua non, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.'" *Id.* (quoting 17A Am.Jur.2d *Contracts,* § 213 (1991)).

In the present case, the trial court found that, at the time it entered into the all-requirements contract, the Jay County Board understood that the contract was a long-term commitment that obligated Jay County to purchase its total power requirements from WVPA regardless of whether WVPA ever received power from Marble Hill. The trial court also found that Jay County understood that Marble Hill was an investment by Jay County and WVPA's other members in the "hope that Marble Hill would be a reliable, low-cost power supply" and that Jay County understood that the investment in Marble Hill involved risks like any other investment. (R. 897–97).

The trial court concluded that the doctrine of mutual mistake did not apply to allow Jay County to avoid the result of the risk inher-

ent in its affiliation with WVPA and Marble Hill. The court further concluded that there was a likelihood that WVPA would prevail at trial on this issue. We find that the court's conclusions were well within its discretion. *See Dairyland Power Cooperative v. United States,* 16 F.3d 1197, 1203 (Fed.Cir.1994) (holding that "there is uniformity among the circuit courts of appeal and the commentators that mutual mistake of fact cannot lie against a future event"); *United States v. Southwestern Electric Cooperative, Inc.,* 869 F.2d 310, 314 (7th Cir.1989) (holding that "the doctrine of mutual mistake does not cover an erroneous 'prediction or judgment as to events to occur in the future' ").

### C. Corporate Status

Jay County contends that the trial court erred in concluding that Jay County is estopped from arguing that the all-requirements contract is void. Jay County contends WVPA should have been incorporated under the REMC Act rather than the Nonprofit Corporations Act, and the failure to incorporate under the REMC Act voids the all-requirements contract that WVPA and Jay County have operated under for more than two decades. In fact, Jay County goes so far as to argue that any contracts related to "general district corporation" business over the last twenty-one years are void. Jay County cites *Faust v. Design Consultants, Inc.,* 542 N.E.2d 1383, 1384 (Ind.Ct.App. 1989), in which this court held that noncompliance with statutory requirements as preconditions for engaging in a particular business "renders void any contracts made in carrying on the business."

The trial court found that the 1977 all-requirements contract and the 1982 extension contract signed by Jay County and WVPA clearly identified WVPA as "a Not–for–Profit Corporation organized and existing pursuant to the laws of the State of Indiana...." (R. 894). The court tersely concluded that WVPA is likely to prevail on the merits of this issue because Jay County

---

4. The all-requirements contract noted that WVPA proposed to invest in the Marble Hill Nuclear Generating Station being built by Public Service Company of Indiana, Inc. ("PSI"). Due to project delays and cost overruns, WVPA had to seek an unplanned RUS-guaranteed loan to cover its investment in Marble Hill. PSI eventually abandoned construction of Marble Hill, causing financial loss to investors.

is estopped from questioning the validity of the contract by its acceptance of the benefits of the contract for two decades.

We find that the trial court did not abuse its discretion. Jay County's argument is premised on the Indiana Utility Regulatory Commission's observation that while WVPA "functions much as a General District Corporation pursuant to the REMC Act, the precise status of [WVPA] ... is that of a 'public utility' within the meaning of the Public Service Commission Act (I.C. 8-1-2-1 *et seq.*)," and its observation that "WVPA is a 'public utility' within the meaning of the Public Service Commission Act ... tempered somewhat by recognition that WVPA more closely resembles a General District Corporation within the meaning of [the REMC Act]." (R. 1203). Rather than support Jay County's position, these observations indicate that the Commission recognized that WVPA was not required to meet the preconditions of the REMC Act. The all-requirements contract is not void, and the trial court was correct in determining that estoppel applied to prevent Jay County from dissolving its long-standing relationship with WVPA for the bliss of a more favorable union with Cinergy.

### D. Specific Performance

Jay County contends that the trial court erred in concluding that WVPA is likely to prevail on its counterclaim for specific performance. It argues that Indiana's Uniform Commercial Code does not expressly provide for specific performance as a remedy for a seller.

 It is true that Ind.Code 26-1-2-703 does not list specific performance as a remedy for a seller. However, the statute does not purport to be an exhaustive list of all remedies. In fact, as the trial court noted in its findings of fact, Ind.Code 26-1-1-103 states that, absent a particular provision providing otherwise, the principles of law and equity shall supplement the provisions of Indiana's Uniform Commercial Code. We agree with the trial court that a grant of specific performance to a seller is not prohibited by the UCC. *See Central Illinois Public Service Co. v. Consolidated Coal Co.*, 527 F.Supp. 58, 65 (C.D.Ill.1981), *aff'd and remanded,* 673 F.2d 1333 (citing 67 Am.Jur.2d

§ 556 at 747, which provided that "under certain circumstances, specific performance on behalf of the seller has been permitted, as where payment was to be made in a particular manner, and the remedy at law was inadequate").

In the present case, the trial court's findings of fact and conclusions of law indicate that the interrelationship between WVPA and its members is unique, and that because of the uniqueness of the interrelationship and the length of the contract, damages are not quantifiable. The court also found that it is unlikely that Jay County would be able to pay damages if they could be quantified.

The uniqueness of the interrelationship between a cooperative and its members is best expressed by the Tenth Circuit in *Tri-State Generation & Trans. v. Shoshone River Power, Inc.*, wherein the court observed that:

> [T]he all-requirements contract and the entire enterprise of the parties in this case are based on the continuance of the contract throughout the agreed-upon term, especially in light of the cooperative nature of the Tri-State system, the role the all-requirements contract plays in the cooperative venture, and the participation and interrelationship of the individual cooperatives....
>
> The all-requirements contract in this case, [unlike the typical all-requirements contract], is not a routine arm's-length requirements contract between unrelated, private for-profit parties.... The all-requirements contracts which form the Tri-State system are not simple requirements contracts but rather interdependent, joint and mutual contracts with a common purpose of securing the [RUS] loans and thereby effectuating the [RUS] policy to provided the economic means for supplying electricity to rural areas....

874 F.2d 1346, 1357, 1359 (10th Cir.1989). Like the Tri-State system, the WVPA "system" is comprised of members who are each governed by all-requirements contracts with the cooperative. The contract of a single member is interrelated with the contracts of each of the remaining members. Jay County's termination of the contract not only has

a negative effect upon WVPA, it also has a negative effect on the remaining members who will have to bear the increase in their costs occasioned by the termination. The cooperative nature and length of the interrelated contracts, coupled with the extreme difficulty of determining damages arising from termination of the contract and the inability of Jay County to pay the damages if quantified, make it very possible that the grant of specific performance is the only proper remedy in this case. Accordingly, the trial court did not err in concluding that there was a likelihood that WVPA would prevail on its counter-claim for specific performance.

 Jay County argues a grant of specific performance would directly conflict with Ind.Code 23–17–8–1(a), which provides that a member of a nonprofit corporation "may resign at any time." Subsection (b) of the same statute provides that the resignation of a member "does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made before a resignation." Jay County obligated itself to be a member of WVPA and to purchase its energy from WVPA until 2028. We do not read Ind.Code 23–17–8–1, when considered in its entirety, to allow Jay County, as a member of a cooperative which has specifically agreed to a contractual interrelationship with other members of the cooperative, to "resign at any time" and ignore obligations and commitments previously made. Accordingly, a grant of specific performance would not directly conflict with Ind.Code 23–17–8–1.

### 3. Balance of Harms

 Jay County contends that the trial court abused its discretion in concluding that any injury occasioned by the grant of the injunction was outweighed by the injury to WVPA if the injunction was not granted. The trial court concluded that any injury suffered by Jay County because of the grant

of the injunction would be covered by a million dollar bond posted by WVPA.

The trial court also concluded that WVPA would be harmed "significantly and irreparably" if Jay County were allowed to breach its supply contract and buy its power requirements elsewhere because (1) WVPA's damages from Jay County's breach are difficult to quantify; (2) Jay County's ability to pay more than nominal damages is substantially in doubt; (3) WVPA's ability to effectively plan and operate as a power supplier would be hindered if Jay County or other members are able to stop buying power at will; and (4) WVPA's ability to operate would be hindered as other members, after having Jay County's share of fixed costs transferred to them, would likely follow Jay County's lead and avoid their contracts. (R. 922).

The trial court cited *Fuchs v. Rural Electric Convenience Cooperative, Inc.*, 858 F.2d 1210 (7th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989), in support of its conclusion. In doing so, the court agreed with the *Fuchs* court's conclusion that the withdrawal of a cooperative member "raises the possibility of default [on RUS loans], with potentially disastrous results for the system." 858 F.2d at 1212–13, n. 8.

Jay County questions whether the evidence is sufficient to support a finding that members would defect from the WVPA system if the injunction had not been granted. Assuming *arguendo* that Jay County is correct, it is still clear that the trial court did not abuse its discretion. As discussed above, it is unlikely that Jay County will be able to cover any damages payable to WVPA. On the other hand, any damages payable to Jay County will be covered by the million dollar bond.[5]

### 4. Public Interest

 Jay County contends that the trial court abused its discretion in determining that the public interest would be best served by the grant of the temporary injunction. Jay County points to a possible savings of

---

5. Jay County maintains that the deal with Cinergy is voided by the grant of the injunction. Jay County admits, however, that the terms of the

Cinergy contract can easily be duplicated in today's market.

10–17% that its customers might have enjoyed if the injunction had not been granted and it had been allowed to purchase electricity from Cinergy. It maintains that the public would have suffered no loss if the injunction had not issued.

The trial court determined that the public interest would not be disserved by the grant of the preliminary injunction. The trial court concluded that if the injunction did not issue, Jay County's fixed costs would be shifted to the remaining members, and WVPA's ability to make debt service payments to RUS required by the recently implemented reorganization plan would be jeopardized.

We agree with the trial court. As we have previously discussed, WVPA has posted a bond which will cover any possible damages that Jay County may suffer during the time of the preliminary injunction. Presumably, Jay County will pass along any benefits to its customers. On the other hand, Jay County may be unable to pay any possible damages that WVPA may suffer during the time of the preliminary injunction. In addition, other members of the cooperative will initially bear the burden of shifted costs, a burden which undoubtedly will be placed upon the members' customers. Furthermore, WVPA's ability to make debt service payments to RUS will be hindered and the costs may ultimately be shifted to taxpayers. *See Fuchs,* 858 F.2d at 1212–13, n. 8.

### CONCLUSION

The trial court did not abuse its discretion in granting WVPA's request for a preliminary injunction in this matter.

Affirmed.

NAJAM and BAKER, JJ., concur.