Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2013, 5:23 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL L. SCHULTZ**
**TRAVIS W. MONTGOMERY**
Parr, Richey, Obremskey, Frandsen &
Patterson, LLP.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**RONALD E. WELDY**
Weldy & Associates
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CANNON IV, INC., | ) | |
| Appellant, | ) | |
| vs. | ) | No. 49A04-1304-PL-171 |
| MATTHEW ANTISDEL, | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1002-PL-4755

**October 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Cannon IV appeals the judgment of the Marion Superior Court in favor of Matthew Antisdel ("Antisdel") in Antisdel's breach of contract claim against Cannon IV arising out of an Employment Agreement between the parties. On appeal, Cannon IV argues that the trial court erred when it found that Cannon IV breached the Employment Agreement by reducing Antisdel's base salary.

We affirm.

### Facts and Procedure

Beginning on January 12, 2002, Antisdel was employed as a service technician by Cannon IV. Antisdel worked as an at-will employee for several years before entering into an Employment Agreement ("Agreement") with Cannon IV, effective on December 26, 2007. The Agreement, drafted by Cannon IV, stated that Antisdel would receive a base pay of $1,574.89 per bi-monthly period, or $37,797.36 per year. The Agreement provided for automatic extension for "successive one year periods ('Renewal Terms'), unless either party provides notice to the other party at least sixty [] days prior to the beginning of any such Renewal Term of its election to terminate the Employment Period." Appellant's App. p. 29.

> Section 5(b) of the Agreement provided:
>
> If the Employment Period is terminated by the Company without Cause or by reason of Employee'[s] resignation with Good Reason, Employee shall be entitled to receive his then-current Base Pay … for the period beginning on the Termination Date and ending on the second anniversary of the Commencement Date, or the expiration of the then current one year Renewal Term.

Id. at 29.

Section 5(c) of the Agreement stated:

> If the Employment Period is terminated by the Company for Cause, by reason of Employee'[s] resignation (other than for Good Reason) … Employee shall be entitled to receive his then-current Base Pay … only to the extent that such amount or benefit has accrued through the Termination Date.

Id. at 30.

Section 5(d) defined "Cause," in part, as:

> (i) the failure by Employee to perform such duties commensurate with Employee'[s] status as a Service Technician as determined from time to time by the Company; (ii) Employee'[s] material disregard of his duties or failure to act, where such action would be in the ordinary course of Employee'[s] duties[.]"

Id.

Section 5(e) of the Agreement defined "Good Reason," in relevant part, as:

> (i) the failure by the Company to pay Employee any amount otherwise due hereunder; (ii) a reduction in Employee'[s] Base Pay[.]

Id.

In 2008, Antisdel did not give notice to Cannon IV of his intention to terminate the Agreement, nor did Cannon IV give notice to Antisdel of its intention to terminate the Agreement. On February 23, 2009, Antisdel met with one of his supervisors, who told him that Cannon IV was "losing a good chunk of money" and had "thought about laying off about six people, but decided that instead of doing that, they were going to cut everyone's pay by seven percent effective Monday, March 2, [2009]." Tr. p. 27. After the meeting, Antisdel decided to review his copy of the Agreement.

3

The next day, February 24, 2009, Antisdel received a written reprimand from one of his supervisors regarding his failure to properly use the "Eautomate" system[1] and his failure to "keep [his] scheduled calls up to date." Appellant's App. p. 39. The reprimand did not indicate that Antisdel's employment was in immediate jeopardy. Rather, it stated, "[i]f an additional reprimand is needed, I will at that time discuss with you your future at Cannon IV and if your continued employment is in the best interest of our clients and Cannon IV." Id.

On Friday, February 27, 2009, Antisdel met with an attorney regarding the pay cut and its implications for the Agreement and, later that night, instructed his attorney to issue a resignation letter to Cannon IV on Antisdel's behalf. Cannon IV received Antisdel's resignation letter by an email transmitted by Antisdel's attorney on March 3, 2009. The letter stated:

> It is our understanding that effective March 2, 2009, the salary of Mr. Antisdel was decreased by seven percent. It is also our understanding that the compensation of Mr. Antisdel is governed by the Employment Agreement entered into by Mr. Antisdel and [Cannon IV] on December 21, 2007.
>
> * * *
>
> Pursuant to Section 5(e), Mr. Antisdel hereby provides written notice that he intends to resign effective March 18, 2009 for "Good Reason" as a result of the reduction of his Base Pay per Section 5(e)(ii). Pursuant to Section 5(e), [Cannon IV] is hereby provided a 15-day opportunity to cure. If [Cannon IV] intends to cure, then we would ask that notice of this intention is provided to both Mr. Antisdel, personally, and this office via fax or e-mail.

---

[1] "Eautomate" is a system used by Cannon IV to keep track of the work activities of its service technicians. Tr. p. 68. Antisdel testified that he and a Cannon IV supervisor had spoken several times in the months leading up to his written reprimand about the company's expectations regarding Antisdel's use of the "Eautomate" system. Tr. p. 70.

Ex. Vol., Plaintiff's Ex. L (internal parentheticals omitted).[2]

The day after Antisdel's attorney sent the resignation letter, March 4, 2009, Antisdel met with a Cannon IV supervisor, who told him that Cannon IV had received and accepted his letter of resignation. The supervisor also told Antisdel that Antisdel's last official day with Cannon IV would be March 18, 2009. The following day, March 5, 2009, James Jones, Cannon IV's chief operating officer, met with Antisdel and told Antisdel that Cannon IV would pay him through March 18, 2009 and that Antisdel would only need to work through March 6, 2009. Jones also told Antisdel that his final wages would not be subject to the seven percent pay reduction, since his resignation was close in time to the date the pay cut was to take effect. Approximately half an hour after his meeting with Antisdel, Jones transmitted via e-mail to Antisdel and Antisdel's attorney the same information he had verbally relayed to Antisdel.

Later that day, Antisdel's attorney e-mailed to Jones a letter that stated:

Mr. Antisdel does not consider your March 5, 2009 e-mail a response to his letter of March 3, 2009[]. As such, please specifically advise if Cannon IV wants to cure or does not want to cure the reduction in the base pay of Mr. Antisdel pursuant to Section 5(e) of the Employment Agreement.

Ex. Vol., Plaintiff's Ex. M.

On March 6, 2009, Jones informed Antisdel that Cannon IV no longer employed Antisdel and that any further discussions regarding his employment must occur through Antisdel's attorney. The same day, Antisdel's attorney received a letter from Cannon IV's attorney offering to allow Antisdel to resign, sign a release, and receive the benefits

---

[2] The record shows that December 21, 2007 is the date Antisdel first received a copy of the Agreement. The Agreement was effective on December 26, 2007. Tr. pp. 11, 13.

5

set forth in the March 5, 2009 e-mail from Jones to Antisdel's attorney. The letter further provided that if Antisdel refused the offer, Cannon IV "hereby gives notice of Mr. Antisdel's termination for cause and deems his termination date to be March 6, 2009." Appellant's App. p. 42. Antisdel did not sign the release. Thereafter, Cannon IV paid Antisdel his un-reduced wages through March 18, 2009. Cannon IV did not communicate any intention to cure on or before March 18, 2009 and did not pay Antisdel any wages after March 18, 2009.

On February 2, 2010, Antisdel filed a complaint against Cannon IV alleging that Cannon IV breached its Agreement with Antisdel and that Cannon IV was required to pay Antisdel "his Base Pay until the second anniversary of the Commencement Date or December 21, 2009." Appellant's App. p. 18. A bench trial was held on March 5, 2013. On March 13, 2013 the trial court issued its findings of fact and conclusions of law, which included a judgment against Cannon IV in favor of Antisdel. The trial court found, in relevant part:

> B. Mr. Antisdel Resigned for Good Reason
> * * *
> 6. Cannon IV did not have the right to lower the compensation of Mr. Antisdel during the Employment Period that this Employment Agreement was in effect.
>
> 7. Cannon IV repudiated and/or anticipatory [sic] breached the Employment Agreement when it gave notice to Mr. Antisdel on February 23, 2009 that Cannon IV intended to lower Mr. Antisdel's rate of pay by 7% effective March 1, 2009.
> * * *
> 10. A resignation with Good Reason includes a reduction in Employee's Base Pay.
>
> 11. Mr. Antisdel provided written notice to Cannon IV that he was

6

resigning due to the 7% reduction in his Base Pay.

12. Mr. Antisdel also provided written notice to Cannon IV of its 15-day opportunity to cure.

13. When Cannon IV failed to cure, the Employment Period of Mr. Antisdel terminated for Good Reason and Mr. Antisdel is entitled to his Base Pay from his Termination Date, March 18, 2009, until the end of the Renewal Term, December 26, 2009.

C. Mr. Antisdel Never Breached the Employment Agreement

14. Based upon the evidence, Mr. Antisdel did not breach any provisions of the Employment Agreement.

* * *

16. As the first to breach the Employment Agreement, Cannon IV is precluded from attempting to enforce the terms of the Employment Agreement against Mr. Antisdel including asserting grounds to terminate Mr. Antisdel pursuant to the Employment Agreement for Cause.

Appellant's App. pp. 11-13 (internal citations omitted).

The trial court entered judgment in favor of Antisdel in the amount of $28,872.99 in damages and $8,216.90 in statutory prejudgment interest. Cannon IV now appeals. Additional facts will be provided as necessary.

**Standard of Review**

Because the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), our standard of review is two-tiered. First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. Briles v. Wausau Ins. Co., 858 N.E.2d 208, 212 (Ind. Ct. App. 2006), trans. denied. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Walsh & Kelly, Inc. v. Int'l Contractors, Inc., 943 N.E.2d 394, 398 (Ind. Ct. App. 2011), trans. denied.

7

Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them.  Briles, 858 N.E.2d at 212.  A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made.  Id.  We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.  Id.  Although we defer to the trial court's factual findings, we evaluate questions of law de novo.  McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010).

**Discussion and Decision**

Cannon IV challenges the trial court's conclusion that Cannon IV anticipatorily breached the Agreement and that Antisdel had "Good Reason" to resign.  Cannon IV claims that its February 23, 2009 notice to Antisdel of the seven percent pay cut constituted only a request to be released from the terms of the Agreement and that "[m]ere notice of an intended act, without more, is not sufficient to constitute breach of contract by anticipatory repudiation."  Appellant's Reply Br. at 3.  Because it did not breach the Agreement, Cannon IV asserts, Antisdel had no "Good Reason" to terminate the Agreement.

In Indiana, one party's anticipatory breach of contract excuses the other party from further performance.  Page Two, Inc. v. P.C. Mgmt., Inc., 517 N.E.2d 103, 106 n. 2 (Ind. Ct. App. 1987).  "Repudiation of a contract must be positive, absolute, and unconditional in order that it may be treated as an anticipatory breach."  Angelone v. Chang, 761 N.E.2d 426, 429 (Ind. Ct. App. 2001).

In support of its argument, Cannon IV cites <u>Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.</u>, where appellant Jay County Rural Electric Membership Corporation ("Jay County") argued that Wabash Valley Power Association ("WVPA") anticipatorily repudiated its contract with Jay County when it notified Jay County of its intent to merge with another cooperative. 692 N.E.2d 905, 910 (Ind. Ct. App. 1998). WVPA had drafted a proposed "intent to merge" resolution and informed Jay County that it would consider adoption of the resolution at its February board meeting. Within a few days of receiving the notice, Jay County terminated its contractual relationship with WVPA. Two days after Jay County terminated the contract, the WVPA board passed the resolution. This court affirmed the trial court's conclusion that, at the time Jay County terminated its contractual relationship with WVPA, WVPA had not breached the contract because "WVPA had not communicated a positive, absolute, and unconditional repudiation of the contract." <u>Id</u>. at 912.

We find the present case distinguishable from <u>Jay County v. WVPA</u>. In <u>Jay County v. WVPA</u>, at the time Jay County terminated the contract, WVPA had merely informed it that WVPA was <u>considering</u> adopting the "intent to merge" resolution and had not yet prepared a final plan of merger. Unlike WVPA, Cannon IV was not simply <u>considering</u> a pay cut, nor had it merely <u>proposed</u> a resolution setting forth its intent to reduce its employees' pay. Rather, the record shows that Cannon IV not only "<u>decided</u> to do an across the board 7% reduction of everyone's pay including Mr. Antisdel," but also notified its employees, including Antisdel, of its decision and the date the pay cut would take effect. Appellant's App. p. 5 (emphasis added). Thus, on the day Antisdel resigned,

9

he was on notice that his salary would be reduced. Furthermore, the fact that Cannon IV later decided not to apply the seven percent pay cut to Antisdel's final wages because his resignation occurred so close in time to the day the pay cut was to take effect belies Cannon IV's assertion that it simply requested to be released from the Agreement, as does Jones's testimony that the pay cut's potential violation of the terms of the Agreement "really wasn't a thought at the time [the decision was made]." Tr. p. 107.

Therefore, under the facts and evidence before it, the trial court's conclusion that Cannon IV anticipatorily breached the Agreement and that Antisdel had "Good Reason" to resign did not constitute clear error. See Ralph E. Koressel Premier Elec., Inc. v. Forster, 838 N.E.2d 1037, 1045 (Ind. Ct. App. 2005) (finding that prospective seller of business anticipatorily breached listing agreement with business broker where, after buyer agreed to purchase business at a price acceptable to seller, seller notified broker that he did not intend to pay broker any commission on the sale because he believed that broker had not done enough work to justify payment of the commission, and seller's attorney notified broker that he was being terminated).

Cannon IV also argues that since it notified Antisdel, after his attorney tendered Antisdel's resignation letter, that it would not reduce his final pay check, it had cured and that since there was no reduction in pay, there was no "Good Reason" for Antisdel to resign. Indeed, the record shows that after Antisdel resigned, Cannon IV decided not to apply the seven percent reduction to Antisdel's final wages since his resignation occurred close in time to the institution of the pay cut.

The fact that Cannon IV ultimately failed to enforce the pay reduction against Antisdel's final pay period wages does not somehow rescind its breach of the Agreement and does not constitute curing of the breach. A "cure" occurs where a party has failed to perform but the party's performance or offer to perform shortly after the breach "has the effect of 'curing' the breach to the extent that the breach is no longer material." See Frazier v. Mellowitz, 804 N.E.2d 796, 803 (Ind. Ct. App. 2004) (quoting Murray on Contracts, § 167 (2d Rev. ed. 1974)).

The trial court found that, although Cannon IV did not reduce Antisdel's wages in his final pay, it "has not paid Mr. Antisdel any money since March 18, 2009." Appellant's App. p. 10. It also found that "[f]rom March 19, 2009 (the Termination Date) to December 26, 2009 (the Renewal Date), Cannon IV should have paid Mr. Antisdel $28,872.99." Id. If Cannon IV's intention had been to cure under the Agreement, it would have notified Antisdel that it would not reduce his pay and that he could continue his employment with Cannon IV at the base pay set forth in the Agreement through the end of the contract term, or it would have paid him the full amount due for the term under the Agreement. Cannon IV's payment of the un-reduced base pay that was already due Antisdel for his last pay period was not a cure for purposes of contract law.

Finally, Cannon IV argues that it terminated Antisdel for "Cause" because of "Antisdel's repeated failure to meet reasonable expectations of communication and project management and his intentional disregard for his obligations to Cannon IV on

11

February 27."[3] Appellant's Br. at 18. It asserts, "Antisdel's employment terminated at the end of business on [March 6, 2009], as did his right to collect any further pay or benefits from his then-former employer." Appellant's Br. at 11.

We disagree. Since Cannon IV was the first to breach the Agreement by reducing Antisdel's base salary, it may not subsequently enforce the Agreement against Antisdel by asserting grounds to terminate Antisdel for cause. See Licocci v. Cardinal Associates, Inc., 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) (providing, "[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract."). As the trial court noted in its findings, it was only after Antisdel asserted his rights under the Agreement that Cannon IV attempted to terminate him. When Cannon IV issued the February 24, 2009 written reprimand to Antisdel, it did not indicate any intention to terminate Antisdel because of the performance issues set forth in the reprimand. Furthermore, Jones testified that, at the time of his March 3, 2009 meeting with Antisdel, "I was aware of the reprimand. I told [Antisdel] to fix what he needed to fix … and let's just move on. I didn't agree with quitting your job over seven percent[.]" Tr. p. 104. Given this evidence, we cannot say that the trial court clearly erred when it concluded, "Cannon IV is precluded from attempting to enforce the terms of the Employment Agreement against Mr. Antisdel including asserting grounds to terminate Mr. Antisdel pursuant to the Employment Agreement for cause." Appellant's App. p. 13.

---

[3] Here, Cannon IV refers to the fact that Antisdel's February 27, 2009 meeting with his attorney regarding the Employment Agreement occurred during his normal work hours.

12

**Conclusion**

For all of these reasons, we conclude that the trial court's conclusions that Cannon IV breached the Employment Agreement and that Antisdel resigned for "Good Reason" are not clearly erroneous.  The judgment of the trial court is therefore affirmed.

Affirmed.

NAJAM, J., and BROWN, J., concur.