OPINION
ROBB, Judge

Case Summary

Indiana High School Athletic Association (“IHSAA”) appeals the trial court’s grant of injunctive relief for Jessah Martin. We affirm. '

Issue

IHSAA raises one issue for our review which we restate as whether the trial court *4 properly granted Martin’s motion for preL liminary injunction.
Facts and Procedural 'History[1]
Martin attended Bellmont High School through the 1998-99 school year-and competed in athletics there. After having personal problems with her family, Martin moved out of her home during the summer of 1999 and into the home of one of her former assistant basketball coaches, Harry Miller, and his family. The Miller home is also located in the Bellmont school district. However, because of problems that Martin had experienced at Bellmont, she chose to switch schools contemporaneously with her move and transferred to Bishop Luers High School.
Martin, wishing to continue to play varsity basketball at Bishop Luers, proceeded with the paperwork explaining her transfer. Administrators at both Bellmont and Bishop Luers provided information for the IHSAA Athletic Transfer Report which indicated that Martin was transferring without a change of residence by her parents but was requesting immediate athletic eligibility because she was emancipated.[2] Bishop Luers provided that the reason for the transfer was personal concerns, including her mother’s employment within the Bellmont school district, and recommended that Martin be declared immediately eligible according to Rule 19-6.1, titled Transfer Eligibility Without Change of Residence by Parent(s)/Guardian(s), Immediate Eligibility. However, Bellmont indicated that Martin had moved out of her house unannounced, that Martin’s reason for leaving Bellmont was unknown, and suggested that an additional investigation should be made.
IHSAA granted Martin limited, or junior varsity, eligibility. Martin requested a hearing wherein the IHSAA committee heard from Martin, Miller, and another of Martin’s previous assistant coaches from Bellmont, Robert Hacker. Martin also provided the .committee with letters ex-, plaining the situation that she was in at Bellmont, as well as describing her personal problems. At the hearing, it was explained that Martin did not fit IHSAA’s definition of emancipation because she did not live on her own and was not self-supportive. Thus, Martin sought a hardship exception to the transfer rule so that she would be allowed to play varsity sports.[3] However, IHSAA determined that under the IHSAA Eligibility Rules, Martin qualified for only limited eligibility for a 365 day period commencing on the date of her last participation in sports at Bellmont, after which she would have gen *5 eral eligibility. , Further, THSAA noted in its ruling that it had considered Martin’s hardship request, but had determined that she failed to demonstrate she was entitled to an exception under the hardship rule.
Martin then instituted a lawsuit and filed a motion seeking a preliminary injunction and declaratory judgment to permanently enjoin the enforcement of IHSAA’s limited eligibility ruling. After a hearing, the trial court granted- Martin’s motion and preliminarily enjoined' I-HSAA from enforcing its ruling that Martin had limited eligibility. Thus, the trial court found that Martin was eligible to immediately participate in varsity athletic events at Bishop Luers High School. However, Martin chose not to participate and did not play basketball. IHSAA properly instituted this interlocutory appeal.
Additional facts will be provided as necessary.

Discussion and Decision

I. Mootness
Although not raised by the parties, we initially note that because Martin elected not to participate in basketball and because the basketball season is now oyer, it would appear that the issue of whether or not the preliminary injunction was proper would be moot. However, because, both parties are still involved in litigation[4] and the issue of attorneys fees is still viable, this case is not moot and we have jurisdiction to decide this case. See Washington, et al. v. Indiana High School Athletic Ass’n., Inc., et al., 181 F.3d 840, 844 (7 th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999) (holding that, although the basketball season was completed, because an actual controversy still existed the court had jurisdiction and review was proper).
II. Standard of Review
Our standard of reviewing a ruling on an injunction is deferential; the grant or denial of an injunction is a discretionary matter for the trial court. Grand Trunk Western R.R. Co. v. Kapitan, 698 N.E.2d 368, 366 (Ind.Ct.App.1998), trans: denied. “We will not interfere with the exercise of that discretion unless' it is' shown that the trial court’s action was arbitrary or constituted a clear abuse of-discretion.” Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.; 637 N.E.2d 1306, 1311 (Ind.Ct.App.1994). An abuse of discretion occurs when the trial court’s décision is clearly against the logic and effect of the facts and circumstances or if the trial "court" misinterprets the law. Grand Trunk, 698 N.E.2d at 366. Upon review of the trial court’s action, we will not weigh conflicting evidence. Id. We will only consider the evidence which supports the trial court’s findings, conclusions, and order. Id.
In order to" determine whether the trial court abused its discretion, we first review the trial court’s findings of fact. Tioga Pines, 637 N.E.2d at 1311. We then determine whether the trial court’s findings support the judgment and whether, based on the findings, the conclusions of law and judgment are" clearly erroneous. American Cyanamid Co. v. Stephen, 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993). “Whether such findings of fact’ áre adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment and whether they are sup.ported by evidence of probative value. Such findings may not be set aside unless they are clearly erroneous.” Tioga Pines, 637 N.E.2d at 1311 (quoting College Life Ins. Co. of Am. v. Austin, 466 N.E.2d 738, 742 (Ind.Ct.App.1984)).
*6 III. Grant of Preliminary Injunctive Relief
A. Trial Court’s Standard of Review of IHSAA Rulings
“[A]s a matter of state common law, the [trial] courts of Indiana have jurisdiction to review challenges to IHSAA rules and enforcement decisions applicable to a particular student.” Indiana High School Athletic Ass’n, Inc. v. Carlberg, 694 N.E.2d 222, 231 (Ind.1997). However, challenged IHSAA decisions are reviewed only for arbitrariness and capriciousness. Id. at 233. “Arbitrary and capricious” is a narrow standard of review; the trial court may not substitute its judgment for the judgment of the IHSAA.. Id. “The rule or decision will be found to be arbitrary and capricious ‘only where it is. willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to'the same conclusion.’” Id. (quoting Department of Natural Resources v. Indiana Coal Council, Inc., 542 N.E.2d 1000, 1007 (Ind.1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)).
When a trial court reviews .an IHSAA eligibility decision, it is limited to reviewing a “record of the proceedings conducted before the IHSAA with respect to the factual determinations made by the IHSAA.” Indiana High School Athletic Ass’n, Inc. v. Wideman, 688 N.E.2d 413, 416 (Ind.Ct.App.1997), trans. denied,. The trial court may not judge the credibility oí witnesses or reweigh the evidence; it must simply analyze the récord as a whole, including the record of the proceedings before the IHSAA along with any properly admitted, relevant new evidence presented to the trial court to determine whether the IHSAA’s findings were supported by substantial evidence. Id. The trial court must overturn the IHSAA’s ruling when it is determined that the IHSAA acted arbitrarily and capriciously in making its decision. Id.
B. Required Showing for Preliminary Injunction
Generally, the trial court considers four factors in determining whether or not to grant injunctive relief:
1. whether plaintiffs remedies at law are inadequate, thus, causing irreparable harm pending resolution of the. action;
2." whether the plaintiff can demonstrate a reasonable likelihood of success on the merits;
3. whether threatened injury to the plaintiff outweighs the threatened harm the grant of relief would occasion upon the defendant; and
4. whether the public interest would be disserved by granting relief.
Wideman, 688 N.E.2d at 416.
IHSAA acknowledges the four factors that Martin must prove in order to obtain an injunction. IHSAA notes that Martin had the burden of proving factors one through three but that the fourth, public interest, is left up to the trial court’s discretion. Thus, if Martin failed to prove any one of the first three factors, it is an abuse of discretion for' the' trial court to grant the injunction. Whiteco Indus., Inc. v. Nickolick, 549 N.E.2d 396, 397 (Ind.Ct.App.1990).
IHSAA specifically contends that Martin failed to demonstrate a probability of success on the merits and thus, the trial court abused its discretion in granting the preliminary injunction. IHSAA does not argue that the trial court erred in its consideration and determination with respect to the other three factors.[5] Essentially, *7 IHSAA is arguing the validity of the underlying merits of Martin’s case, attacking the evidence and asserting that Martin did not prove that she could succeed on the merits.
In order to prove that she had a reasonable likelihood of succeeding on the merits of her claim to the extent necessary for the preliminary injunction to be proper, Martin must establish a prima facie case through substantial, probative evidence that she was entitled to full eligibility. See Boatwright v. Celebration Fireworks, Inc., 677 N.E.2d 1094, 1096 (Ind.Ct.App.1997). Substantial evidence is that which is “more than a scintilla and less than a preponderance.” Partlow v. Indiana Family and Soc. Servs. Admin., 717 N.E.2d 1212, 1217 (Ind.Ct.App.1999). Although Martin had to establish a prima facie case, she was “not required to show that [s]he [wa]s entitled to relief as a matter of law, nor [wa]s [s]he required to prove and plead a case which would entitle h[er] to relief upon the merits.” Norlund v. Faust, 675 N.E.2d 1142, 1149 (Ind.Ct.App.1997), trans. denied. We note that our Federal counterparts have stated that “[i]n the preliminary injunction context, a ‘likelihood of success’ exists if the party seeking injunctive. relief shows that it has a ‘better than negligible’ chance of succeeding on the merits.” Washington, 181 F.3d at 846 (quoting Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114 (7 th Cir.1997)). Our state and the federal standards may differ in the terms used, but do not differ in the quantum of the evidence required.
IV. Eligibility Determination
In order to be entitled to full eligibility, Martin would have to either (1) meét the requirements of the transfer rule, and if she did not, (2) be entitled to a hardship exception. IHSAA argues that there was not substantial evidence before the trial court that Martin would succeed on the merits of proving she was entitled to full eligibility. Specifically, IHSAA first contends that the trial court erred in concluding that IHSAA’s ruling granting Martin only limited eligibility under the “transfer rule” was not supported by substantial evidence (conclusions 9 and 10). Next, IHSAA contends that the trial court erred in concluding that there was not substantial evidence to support IHSAA’s denial of Martin’s hardship exception request (conclusions 8, 9,11,12,13 and 14).
A. Transfer Rule Determination
The trial court’s conclusion of law number 9 concluded that the IHSAA determination that Martin be granted only limited eligibility for 365 days, after which she would have general eligibility, and that she failed to prove she was entitled to the hardship exception was not supported by substantial evidence. Moreover, it found in conclusion number 10 that “[t]he IHSAA’s ruling that Jessah Martin only have limited eligibility under ... Rule 19 [the transfer rule] ⅛ arbitrary and capricious and not supported by substantial evidence of probative value.” R. 308.
IHSAA argues that under the transfer rule alone, Martin was only entitled to limited eligibility. IHSAA apparently reads conclusions 9 and 10 to mean that the trial court determined IHSAA’s ruling under the transfer rule was unsupported by substantial evidence. IHSAA points out that Martin originally asserted that she was emancipated in order to avoid operation of'the transfer rule in the first instance. However; once it was deter *8 mined that she did not fit IHSAA’s definition of emancipation, Martin abandoned that theory and sought eligibility based under the hardship rule.
The trial court did not disagree with IHSAA’s determination that Martin was not emancipated. We agree that IHSAA is correct that Martin does not meet the definition of emancipation as defined by the IHSAA and is not entitled to immediate eligibility without a change of residence by her parent(s)/guardian(s) pursuant to the transfer rule. Rule 19-6.1. Further, to the extent the trial court’s conclusions 9 and 10 can be interpreted to mean that IHSAA’s determination of Martin’s eligibility pursuant to ’ the. transfer rule alone was unsupported by the evidence, the conclusions are erroneous. However, Rule 19, which is mentioned in conclusion 10, contains not only the specifics of the transfer rule, but also the philosophy of the transfer rule,[6] which is a part of the ultimate decision as "to whether a hardship exception would be appropriate. Conclusions 9 and 10 are not limited to application of the transfer rule specifically; when considered as a whole, we read conclusions 9 and 10 to mean that applying the transfer rule was not proper when considered in conjunction with the philosophy of the transfer rule itself or the hardship rule.
Our Supreme Court has held that when a student fails to meet an exception to the transfer rule, he or she is only entitled to limited eligibility unless the hardship rule applies. Carlberg, 694 N.E.2d at 232 (emphasis: added). Here, conclusions 9 and 10 address IHSAA’s ruling as a whole and contemplate the fact that the hardship exception was denied to Martin as well. IHSAA seems to acknowledge this by including conclusion 9 in its discussion of the trial court’s erroneous conclusions with respect to the hardship rule. Thus, because the findings of fact and conclusions of law, when considered as a whole, are not erroneous, the trial court did not abuse its discretion. See Williams v. Rogier, 611 N.E.2d 189, 196 (Ind.Ct.App.1993), tram, denied (stating that findings of fact will be considered as a whole and liberally construed in favor of the judgment).
B. Hardship Exception Determination
To establish a prima facie case of entitlement to a hardship exception, Martin had to demonstrate that (1) the transfer was beyond her control,[7] (2) the purposes of the transfer rule would still be met if she were granted full eligibility, (3) the spirit of the rule would not be violated, and (4) undue hardship would result from enforcement of the rule. IHSAA Rule 17-8.1, Rule 17-8.4. The trial court concluded that Martin had met her burden, as evidenced by conclusion number 8 which states that: “Jessah Martin demonstrated she met the criteria of the Hardship Rule, Rule 17-8.1.”[8] R. 308.
*9 IHSAA claims that none of these elé-ments were satisfied by Martin and asserts that the trial court’s findings of fact and conclusions of law that Martin did meet the criteria of the hardship rule are erroneous because the findings were not supported by evidence. Thus, IHSAA argues that the trial court’s decision that IHSAA’s ruling was arbitrary and capricious was an abuse of discretion because there was not substantial evidence to show that Martin could ultimately succeed on the merits.
1. Control
IHSAA states that although the trial court “did not issue a conclusion that the transfer was ‘beyond the control’ of the student ... it made findings that are suggestive of the position,” Brief of Appellants at 20, and contends that such findings are erroneous. To support its argument, IHSAA cites nine of the findings, alleging that they are erroneous because they do not establish that Martin’s transfer was out of her control. Thus, IHSAA asserts that because there was not substantial evidence to prove Martin’s transfer was out of her control, the trial court abused its discretion in ultimately finding that Martin could have success on the merits and granting the injunction.
The trial court made the following findings with regard to the issue of whether the transfer was beyond Martin’s control pursuant to Rule 17-8.4:
14. Jessah Martin suffered from severe anxiety , as a result of her home life. Whenever Plaintiffs problems at home became public, Jessah Martin would be blamed or rumors started at Bellmont High School in order to.undermine Jes-sah Martin’s credibility.
[[Image here]]
16. [W]hile Jessah Martin was a student at Bellmont High School and while Jessah Martin resided with her parents, she was accused of having an affair with one of her coaches' and she was the object of numerous rumors and innuen-does from the Bellmont school community.
17. As a result of rumors and innuen-does which circulated at Bellmont High School, Jessah Martin encountered difficult emotional problems attending that school. Her attendance at Bellmont High School was causing her significant mental and emotional stress.
[[Image here]]
24. Upon a review of Martin’s emotional level, living environment, and" school environment, Ron Farthing recommended that Jessah Martin continué to live with the Millers, that she be allowed to transfer to a new school to focus on her academic studies and reduce her anxiety, and that she continue to’seek therapy on a regular basis. Farthing’s recommendations were uncontradicted by any testimony presented before the Executive Committee.
[[Image here]]
26. Jessah Martin and the Millers chose Bishop • Luers High School because they wanted the structure of a parochial school, as well as a school on Millers’ route back to work in order to refrain from purchasing a vehicle for. transporting Martin to and from school.
27. Jessah Martin enrolled at Bishop Luers to escape the mental and emotional anxiety she experienced at Bellmont High School. Jessah Martin intended to utilize and enjoy all of the privileges and benefits attendant to her status as an enrolled student at Bishop Luers. Jes-sah Martin wanted to participate' in interscholastic athletics at a level equal to her ability on behalf of Bishop Luers High School.
[[Image here]]
37. Pursuant to its own By-Laws, the IHSAA considers an illness which pro- *10 Mbits a student from meeting the eligibility rules a hardship.
38. Jessah Martin’s emotional, mental, and physical disorders as presented at the [IHSAA] September 9, 1999 hearing constituted such an ‘illness.’
[[Image here]]
41. Further, the change in schools was necessary for Jessah Martin’s emotional and physical health as demonstrated by the evidence presented to the Committee.
R. 300-05.
There was evidence introduced at the IHSAA committee hearing as well as evidence introduced to the trial court supporting the above-quoted findings. Martin’s father spread rumors about her; specifically, he began a rumor that she was having an affair with one of her assistant coaches, who is now taking legal action against the Martin family. Martin’s mother teaches within the school district in which Bellmont high school is located, causing additional stress for Martin. Martin’s parents prohibited her from talking to certain people at school, including her coach and her counselor, and her parents campaigned to have her assistant coaches fired. Additionally, there was evidence that Martin, who is very private and self-conscious, was the subject of rumors, innuendoes, and embarrassing questions from other students, that she felt uncomfortable at Bellmont, and that she would not attend a party because others there would know too much about her and she was embarrassed. Farthing, the administrator of the Delwood Residential Treatment Facility, further noted that he believed Martin should attend a new school due to anxiety, that she should continue to play basketball, and noted that she displayed symptoms of Post Traumatic Stress Disorder. Miller stated that he wanted Martin to have the structure of a parochial school and that Bishop Luers was located such that he could transport Martin to and from school without having to purchase a vehicle for her. There was also evidence presented from several different witnesses that Martin was having emotional problems, anxiety, and had developed an eating disorder. ■
Additionally, chairman of the IHSAA executive committee, Phillip Gardner, who was present at the IHSAA hearing, testified to the trial court that the committee had no reason to believe that Farthing’s recommendations were not his honest opinion or that anyone who submitted documents on Martin’s behalf did not supply their true feelings. Although Gardner’ has stated that IHSAA. had no reason not to believe the opinions of Martin’s witnesses, the IHSAA deemed most of Martin’s evidence to be insubstantial to support a hardship exception.
Clearly, there was evidence before the trial court that Martin suffered emotional and physical ailments. There were vicious rumors circulated about her in the school district where her mother was a teacher and she encountered peers questioning her about embarrassing issues. Martin was anxious and embarrassed by the circumstances that surrounded her life at Bellmont to the point that she would not socialize with other students. We acknowledge that the student is almost always going to have control over the actual transfer, and Martin concedes that the move was ultimately her decision. However, a student will not necessarily have control over the circumstances which prompt the transfer. The underlying circumstances wMch are the cause of the transfer are what we are concerned with; the issue is whether the student had control over those circumstances. Thus, Martin provided substantial, probative evidence to the trial court that the circumstances which led to Martin’s transfer were outside of her control. See Boatwright, 677 N.E.2d at 1096.
2. Purposes of the Rule
IHSAA argues that the purposes of the rule include deterring athletically motivated transfers and preventing school jumping; both, it claims, involve control *11 over the transfer, which they allege Martin had. IHSAA claims- that another purpose of the rule, preventing the displacement of athletes already participating at the receiving school, would be effected. We disagree.
IHSAA admits that it found that Martin had not transferred primarily for an athletic reason, but argues that “this could have been a totally athletic transfer, since the transfer was not outside Martin’s control.” Brief of Appellants at 27. IHSAA states that the purposes of the rule cannot be advanced here because Martin controlled her transfer and cites Judge Pos-ner’s dissent from Crane v. Indiana High School Athletic Ass’n, 975 F.2d 1315, 1328 (7 th Cir.1992), for the contention that there is concern with “strategically motivated transfers thinly disguised as transfers in the best (nonathletic) interest of the student.” Brief of Appellants at 27. Thus, IHSAA admits that, although they determined that Martin did not primarily move for athletic reasons, there is the possibility that her transfer could have been secondarily motivated by athletic reasons.
Initially, we note that Martin made a prima facie case that she did not transfer for athletic reasons; she transferred because of the hostile environment that surrounded her at Belhnont. Secondly, if IHSAA suspected a ruse on Martin’s behalf, they should have presented evidence to this effect. Instead, they offered nothing and in fact, Gardner stated that there was nothing before the IHSAA to indicate that Martin’s witnesses were not credible and admitted that there was no evidence which contradicted Martin’s evidence. We note that IHSAA uses the possibility of an athletically-motivated transfer, although admittedly not primarily athletically-motivated and only possibly secondarily athletically-motivated, as a way to ultimately keep Martin from receiving a hardship exception. Thus, IHSAA’s use of this “purpose” creates a poison pill for which a student could be denied a hardship under any circumstances if IHSAA suspects that the student may possibly be moving for an athletic reason regardless of whether that would be his or her primary reason for transferring or whether there was any evidence to that effect. Certainly, athletic transfers violate the IHSAA’s rules; howr ever, if the IHSAA declares that a student is not transferring for primarily athletic reasons, it cannot, without any evidence at all, allege that the student may be transferring secondarily for athletic reasons in order to deny a student a hardship exception.
IHSAA further asserts that the rule promotes athletic participation occurring within the school district where the stm dent’s parents have a residence and that this would not be advanced by allowing Martin to attend a school outside of her parents’ present district. We note that this argument is faulty because Martin continues to reside within the same district as her parents, she only transferred from a public to a private school.
Finally, IHSAA argues that the rule’s purpose in protecting other athletes at the receiving school would not be advanced because there would be the possibility that Martin would displace another Bishop Luers athlete. However, there was evidence that there were two open spaces on the Bishop Luers basketball roster, neither of which were held open in anticipation of Martin becoming fully eligible, and that the other team members would experience an increase in the level .and quality of play.
■The trial court had before it evidence which demonstrated that Martin’s move was not due to athletic reasons, but rather because of family problems, and that there were open spaces on the basketball team which Martin could have and that Martin’s participation on the team would elevate the level and quality of the other athletes’ play. Thus, Martin presented credible, substantial evidence which demonstrated that the purpose of the transfer rule would still be met if she were granted a hardship.
3. Spirit of the Rule
IHSAA alleges that Martin- failed to demonstrate that the spirit of the rule *12 would not be violated if she were granted a hardship. Again, IHSAA argues that the critical issue is the control of the student over the circumstances of the transfer. It asserts that when a student lacks control over the circumstances, there is some level of assurance that “academic decisions are not being subordinated to athletic decisions.” Brief of Appellants at 28.
Martin provided evidence to the effect that she suffered from anxiety and emotional as well as physical ailments and that her illnesses and problems at school resulted in her transfer. The evidence showed that it was recommended that Martin transfer schools because of her anxiety. Further, the circumstances causing her anxiety were not caused by her own actions, but by third parties. The evidence before the trial court supported that the circumstances which warranted Martin’s transfer would be within the spirit of the rule.
4. Undue Hardship
Finally, IHSAA alleges that Martin did not establish that she-would suffer an undue hardship if she only had limited eligibility. IHSAA argues that Martin did not demonstrate that denying her full eligibility would result in any undue hardship, “especially since she would get to play basketball this season, albeit on the junior varsity squad'.”5 Brief of Appellants at 28. Further, IHSAA states that although Farthing recommended that it was important for Martin to play basketball, he onlystated that it was important for her to play organized basketball, which junior varsity participation also provides.
There was evidence that Martin is an accomplished basketball player capable of receiving a scholarship, a college scout attended practice to watch her, and that she is estranged from her parents and would have difficulty being able to pay for college without a scholarship to help defray the costs. Further, Farthing recommended that she should continue to play basketball. Thus, Martin offered evidence to establish the fact that she could ultimately lose a basketball scholarship to a Division I school as a result of limited eligibility and that she needed to play basketball for her own mental health and therefore, she would suffer an undue hardship.

Conclusion

Martin successfully offered substantial, probative evidence to establish her prima facie case for a hardship exception to the transfer rule. She demonstrated that she was not in control of the circumstances which'led to her transfer, that the purpose and spirit of the transfer rule would not be compromised, and that she would suffer an undue hardship if the transfer rule was enforced. Thus, the trial court did not err in its findings of fact or conclusions of law and therefore did not abuse its discretion in issuing the preliminary injunction. Accordingly, we affirm.
Affirmed.
SHARPNACK, C.J., and BAILEY, J., concur.

. Oral Argument was held on May 15, 2000 in Indianapolis.

. The IHSAA's "transfer rule” was implemented to "preserve the integrity of inter-school athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons....” IHSAA Rule 19-4. The rule generally provides that a student who transfers to a new school with a corresponding bona fide change of residence may be declared immediately eligible to participate in all interschool athletics, but a student who transfers without a corresponding change of residence may be declared to have eligibility limited for 365 days to non-varsity athletics. However, a student who transfers without a corresponding change of residence may be declared immediately eligible if he can show that he fits into one of thirteen specific exceptions, one of which is that "[t]he student is emancipated and has established a bona fide residence in a new district or territory.” IHSAA Rule 19-5, 19-6.1, 19-6.2.

.The "hardship rule” provides that the IHSAA may set aside the effect of any rule when strict enforcement of the rule in a particular case would not serve to accomplish the purpose of the rule, the spirit of the rule has not been violated, and-circumstances exist which show an undue hardship would result from enforcement of the rule. IHSAA Rule 17-8.1. In determining whether "undue hardship” exists, "[ojrdinary cases will not be considered a hardship; rather, the conditions which cause a violation of a Rulé ... must be beyond the control of the school, the coach, the student, the parents and/or the affected party.” IHSAA Rule 17-8.4(a). Further,' "[ijnjury, illness or accidents which cause a student to fail to meet a basic requirement are possible causes for a hardship consideration.” IHSAA Rule 17-8.4(b).

. At Oral Argument it was brought to our attention that there has been additional litigation with respect to this case.

. The trial court specifically addressed factors number 1, 3, and 4 in its findings; IHSAA does not argue that these were erroneous. With reference to number 2, the merits of the case, the trial court notes in its findings that "[t]he substantial evidence of probative value before the IHSÁA established that under the rules, including the Hardship Rule of the *7 IHSAA, she is entitled to full eligibility to participate in interscholastic athletics at Bishop Luers High School and to continue to do so throughout her senior year at a varsity level.” R. 305. This could reasonably be read to mean that the trial court was finding that Martin demonstrated a reasonable likelihood of success on the merits. Additionally, IHSAA does not contend that the trial court failed to make a finding as to factor 2, it only argues that the trial court's determination of Martin’s reasonable likelihood of success on the merits was not supported by the evidence.

.IHSAA Rule 19, Eligibility and Transfer, Philosophy, states in pertinent part that "[t]he following is a brief resume of the points of philosophy included in the transfer rule.... Participation in interschool athletics is a privilege ... for students who meet the ... standards of qualification.... The privilege of participation ... should fundamentally be available to bona fide students in school districts where their parents or ... guardians reside. Standards governing residence and transfer are a necessary prerequisite to participation in interschool athletics because: (1) ■they protect the opportunities of bona fide •students to participate; ... (8) they serve as a deterrent to students who would transfer schools for athletic reasons.... ”

. IHSAA Rule 17-8.4(a) states that "[o]rdi-nary cases shall not be considered hardship; rather, the conditions which cause a violation of a Rule, ... or the failure to meet the eligibility requirements must be beyond the control of the school, the coach, the student, the parents and/or the affected party.”

. IHSAA Rule 17-8.1 states that "[t]he Commissioner or his designee or the Committee shall have the authority to set aside the effect of any Rule when, in the opinion of the Commissioner or his designee or the Committee, all of the following conditions are met: a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule; b. The spirit of the Rule *9 has not been violated; and c. There exists in the particular case circumstances showing an undue hardship which would result from enforcement of the' Rule.”